**Ex Parte David Lee LEWIS.[1]**

**No. WR–38355–03.**

Court of Criminal Appeals of Texas.

Dec. 6, 2006.

from assertions that the record does not support.

1. The record of applicant's direct appeal and previous documents submitted to this Court indicate that applicant's name is "David Lee Lewis." Documents filed in applicant's habeas case alternatively refer to applicant as "David Lee Lewis" and as "David Leon Lew-

Bryce Benjet, Austin, and David R. Doe, Houston, for Appellant.

James M. Yakovsky, Matthew Paul, State's Atty., Austin, for State.

is." For consistency, applicant will be re-

***ORDER***

PER CURIAM.

This is an application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure article 11.071.

In April 1987, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Code of Criminal Procedure article 37.071, and the trial court, accordingly, set punishment at death. Because some of the reporter's notes from the trial were lost, this Court reversed the conviction. *Lewis v. State,* 844 S.W.2d 750 (Tex.Crim. App.1993). On retrial in June 1993, applicant pleaded guilty to the offense of capital murder. A second jury answered the special issues, and the trial court, accordingly, set punishment at death. This Court affirmed. *Lewis v. State,* 911 S.W.2d 1 (Tex. Crim.App.1995).

Applicant presented two allegations in his application. In his first claim, applicant asserted that his execution would violate the United States Supreme Court's opinion in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), holding that the Eighth Amendment prohibits the execution of the mentally retarded. In his second claim, applicant asserted that the death sentence violated his Sixth Amendment rights because the question of mental retardation was not decided by the jury. By written order dated October 15, 2003, applicant's second claim was dismissed and his first claim was remanded to the trial court for consideration. By written order dated December 8, 2004, this Court instructed the trial court to hold a live hearing on the issue.

On remand, the trial court conducted a live hearing, after which it entered find-

ferred to as "David Lee Lewis."

ings of fact and conclusions of law recommending that relief be denied on applicant's claim. This Court has reviewed the record. We adopt the trial judge's findings and conclusions, except for findings eight and fifteen, which we reject. Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

COCHRAN, J., filed a statement concurring in the denial of relief, in which PRICE and HERVEY, JJ., joined.

WOMACK, J., filed a dissenting statement in which JOHNSON and HOLCOMB, JJ., joined.

COCHRAN, J., filed a statement concurring in the denial of relief, in which PRICE and HERVEY, JJ., joined.

### STATEMENT

I join the Court's Order denying relief. The extensive trial and habeas record supports the trial court's findings that Applicant failed to prove, by a preponderance of the evidence, that he is mentally retarded.[1] I write separately to explain why I also join the Court in declining to adopt the trial court's findings of fact eight and fifteen.

Findings eight and fifteen note that applicant's expert witness, Dr. Richard Garnett, is not a physician or psychologist licensed in Texas. The two findings of fact that we reject are:

8. The Court finds, pursuant to TEX. HEALTH & SAFETY CODE § 591.003, that a "person with mental retardation" means a person determined by a physician or psychologist licensed in this state or certified by the department to meet the stated definition of mental retardation.

15. The Court finds, based on the 2006 writ evidentiary hearing, that Dr. Richard Garnett is not licensed as a psychologist in the State of Texas, but is a licensed professional counselor; that he is not licensed to diagnose mental retardation; that he is not certified by the Texas Department of Mental Health and Mental Retardation to make a diagnosis of subaverage general intellectual functioning.

It is not that these two findings are inaccurate. Instead, they are not of legal significance in deciding whether applicant is mentally retarded for purposes of eligibility for the death penalty under Atkins v. Virginia[2] or Ex parte Briseno.[3] These facts may, of course, be logically relevant in assessing Dr. Garnett's credibility and level of expertise, and the trial judge could (and presumably did)[4] consider his testi-

1. See Ex parte Briseno, 135 S.W.3d 1 (Tex. Crim.App.2004).

2. 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

3. 135 S.W.3d 1 (Tex.Crim.App.2004).

4. The trial court's finding of fact number 14 states:

The Court finds, based on the 2006 writ evidentiary hearing, [that the] trial court did not designate Dr. Garnett as an expert but allowed Dr. Garnett to testify with the admonition that the fact-finder, which is the

trial court, would determine the weight, if any, of his testimony.

We give great deference to this factual finding—dealing with the weight and credibility of the testimony and with the level and scope of a witness's expertise. See Briseno, 135 S.W.3d at 9 ("Although experts may offer insightful opinions on the question of whether a particular person meets the psychological diagnostic criteria for mental retardation, the ultimate issue of whether this person is, in fact, mentally retarded for purposes of the Eighth Amendment ban on excessive punishment is one for the finder of fact, based upon

mony as logically relevant and then gave it the weight he deemed appropriate.

## I.

The trial court, in these two findings, refers to the definition of a "person with mental retardation" that is contained in Chapter 591 of the Texas Health and Safety Code.[5] That chapter is called the "Persons with Mental Retardation Act" (PMRA).[6] The purpose of the PMRA is to "provide and assure a continuum of quality services to meet the needs of all persons with mental retardation in this state."[7] The PMRA reflects Texas public policy by ensuring that those who are mentally retarded have the opportunity to develop their full potential for becoming productive members of society[8] and to obtain assistance "in acquiring and maintaining rights and in participating in community life as fully as possible."[9]

This court has, as a temporary measure,[10] judicially adopted the definition of mental retardation set out in section 591.003(13) of the PMRA as one possible definition for purposes of an *Atkins* claim in the death penalty context.[11] In *Briseno*,

we explicitly noted that the PMRA has a very different purpose in the social services context than it does in death penalty cases.[12] Thus, other definitions and provisions within the PMRA may or may not have relevance to the issue of mental retardation under *Atkins*. In any event, they are not determinative. This Court has never stated or suggested that only a person who is licensed as a physician or psychologist in this state is competent to testify as an expert or to express an opinion on whether a capital murder defendant is or is not mentally retarded.

The issue of whether Texas courts may consider the opinion of a witness who is not a licensed physician or psychologist on the question of mental retardation under *Atkins*, has apparently caused some confusion in the Fifth Circuit as noted in *In re Hearn*.[13] In that case, the majority noted that, for purposes of the PMRA, mental retardation may be diagnosed only by a physician or psychologist licensed in this state, but that this standard has not been made applicable to *Atkins* proceedings in Texas state courts.[14] The dissent suggested

---

all of the evidence and determinations of credibility").

5. Section 591.003(16) reads: " 'Person with mental retardation' means a person determined by a physician or psychologist licensed in this state or certified by the department [the Texas Department of Mental Health and Mental Retardation] to have subaverage general intellectual functioning with deficits in adaptive behavior.' " TEX. HEALTH & SAFETY CODE § 591.003(16).

6. *Id.* § 591.001.

7. *Id.* § 591.002(b).

8. *Id.* § 591.002(a).

9. *Id.* § 591.002(e).

10. In *Briseno*, we explicitly stated, "This Court does not, under normal circumstances, create law," but because the Texas Legisla-

ture had not yet enacted legislation to implement the *Atkins* decision and to avoid delaying justice to inmates, victims, and society at large, we acted "during this legislative interregnum to provide the bench and bar with temporary judicial guidelines in addressing *Atkins* claims." 135 S.W.3d at 4–5.

11. *Briseno*, 135 S.W.3d at 8.

12. *Id.* at 6 (questioning whether "a consensus of Texas citizens agree that all persons who might legitimately qualify for assistance under the social services definition of mental retardation be exempt from an otherwise constitutional penalty").

13. 418 F.3d 444 (5th Cir.2005).

14. *Id.* at 446.

otherwise.[15]

In *Briseno,* we explicitly noted that, in most cases, experts would probably be found to testify on either side of the mental retardation question, at least on the adaptive behavior prong.[16] Thus, we set out a number of other evidentiary factors that trial and reviewing courts might consider in deciding the intrinsically fact-bound question of the adaptive behavior prong of mental retardation.[17] Expert testimony, though helpful, is not essential. And, as I understand it, expert opinion testimony under *Atkins* or *Briseno* is not limited to one who is a state-licensed physician or psychologist. A diagnosis for qualification of social services under the PMRA *is* so limited, but an opinion for purposes of the Eighth Amendment prohibition against cruel and unusual punishment is *not* so limited. In the death-penalty context, the fact-finder may give whatever weight and credibility it deems appropriate to the opinions of either lay or expert witnesses. Licensure is not a litmus test for the admissibility or consideration of any witness's testimony in this context.

## II.

The evidence at trial in this case showed that on November 30, 1986, applicant entered the home of Mrs. Myrtle Ruby, a seventy-four year old widow, through an unlocked bathroom window. He was armed with a loaded, sawed-off rifle. Mrs.

Ruby came home during the burglary, and applicant shot her in the face. He also struck her in the head with the rifle and then drove off in her car with her shotgun, shells, and pillowcase. While applicant went hunting with his grandfather, Mrs. Ruby died from the gunshot wound. Applicant was tied to the crime by physical evidence and by his admissions. After a trial in April 1987, an Angelina County jury found applicant guilty of the capital murder of Mrs. Ruby while in the course of burglarizing her home.[18]

At the punishment phase, the jury answered the special issues affirmatively and the trial judge sentenced applicant to death. On direct appeal, we reversed and remanded for a new trial. On retrial in June of 1993, applicant pleaded guilty to the offense of capital murder, the second jury again answered the punishment issues affirmatively, and applicant was again sentenced to death. This Court affirmed that sentence and, later, denied relief on applicant's first writ.

We remanded applicant's post-*Atkins* subsequent writ application to the trial court to conduct a live evidentiary hearing because neither applicant nor the State had "an adequate opportunity to develop all of the testimony, documentary materials, or other evidence necessary to resolve applicant's claim."[19] The parties have now had a full and fair opportunity to complete the record and present all avail-

---

**15.** *Id.* at 450 (Smith, J., dissenting) (arguing that "if the State of Texas, through its highest criminal court, has decided to use [the PMRA] statutory definition of 'mental retardation' in *Atkins* proceedings, it would be a 'no brainer' that the statutory definition of who is qualified to opine as to mental retardation would also apply").

**16.** 135 S.W.3d at 8 (noting that the "adaptive behavior criteria are exceedingly subjective, and undoubtedly experts will be found to offer

opinions on both sides of the issue in most cases").

**17.** *Id.* at 8–9.

**18.** *See* TEX. PENAL CODE § 19.03(a)(2).

**19.** *Ex parte Lewis,* No. WR–38,355–03, 2006 WL 3499222, 223 S.W.3d 372 (Tex.Crim.App. December 8, 2004) (not designated for publication).

able evidence on the question of mental retardation.

At the writ hearing, Dr. Garnett testified as the sole expert for applicant on his claim of mental retardation. Dr. Garnett is a licensed professional counselor, with a license in marriage, family therapy, and chemical dependency counseling. He is not licensed anywhere as a psychologist, but he has done I.Q. testing, achievement testing, and some social testing for school districts in North Texas for special education programs. He has done "workshops for people who had mental retardation; wrote a manual on sex education for that population," but his Ph.D. dissertation was on biorhythms.

Dr. Garnett testified that he has done a variety of mental retardation assessments on hundreds, if not thousands, of people over the past thirty years. He is a past president of the Texas Association for Retarded Citizens and of the Texas Association on Mental Retardation. The governor has appointed him to be chair of the Texas Council on Autism, and he is on the board of the United States Association for Retarded Citizens and the Texas Office of Prevention of Developmental Disabilities. He has testified as an expert in approximately 25 civil or criminal cases to his "hands-on kind of knowledge about what people with mental retardation are like[.]" However, Dr. Garnett has not done many assessments in recent years and has not been trained in the new Wechsler Adult Intelligence Scale.

After eliciting Dr. Garnett's qualifications, applicant's counsel offered him as an expert in the area of mental retardation. The trial judge responded:

> Well, I never have agreed with a judge having to declare a person as an expert or not. I'll allow him to testify, but I think it's my belief that that's for the finder of fact, but he'll be allowed to testify.

The trial judge explained that "I never have declared anybody an expert. I'll allow him to testify.... He will be allowed to offer his opinion, if that's your issue.... I'm not going to declare the State's person an expert, I'll listen to their testimony. So proceed."

Dr. Garnett then explained that he had reviewed testimony from the first and second trials, school records, a consultation report, records from TDCJ, police offense reports, and affidavits. He had also listened to the testimony of applicant's other witnesses, and personally interviewed applicant and other witnesses. Based on all of the information he reviewed, it was Dr. Garnett's opinion that applicant has mental retardation.

Not surprisingly, the State's expert, Dr. Joseph Kartye, came to the opposite conclusion based upon a review of the same material: applicant is not mentally retarded. Dr. Kartye is a clinical psychologist licensed in the State of Texas, and his practice consists of psychological testing, evaluation, and diagnosis. Dr. Kartye has testified for both the defense and State in cases involving insanity, incompetence, and future dangerousness. Furthermore, Dr. Kartye had testified at applicant's prior trial—before *Atkins* had been delivered and made mental retardation a bar to imposition of the death penalty [20]—that appli-

---

20. The trial judge, in his findings of fact, noted that "the testimony of Applicant's family and friends may tend to be unreliable and biased in an *Atkins* hearing to determine mental retardation." He also stated that in an "*Atkins* claim to determine mental retarda-

tion, such information [by friends and family members] tends to be unpersuasive, tending to slant toward deficiency because of a vested interest on the Applicant's behalf." We grant great deference to these credibility and weight-of-the-evidence determinations by the

cant was not mentally retarded. Instead, it was his opinion that applicant's test scores may not have reflected his full intellectual functioning, possibly due to emotional or environmental factors that caused a lack of motivation.[21] Dr. Kartye noted that applicant has obtained his GED while incarcerated, and such an accomplishment would be an "outstanding feat" for a mildly mentally retarded person.

The trial judge ultimately chose to place greater reliance upon Dr. Kartye's testimony, as well as that of witnesses from the 1987 trial who testified that applicant was not mentally retarded. The trial judge, who had also presided over the original trial and the punishment retrial, was entitled to do so. I emphasize, however, that there is nothing in this writ record that states or suggests that the trial judge rejected Dr. Garnett's opinions merely because he was not a licensed physician or psychologist and hence unqualified to diagnose mental retardation for purposes of the PMRA. Such an automatic rejection would be inappropriate under *Atkins* and *Briseno.*

### III.

In sum, I conclude that, while there is significant expert opinion testimony, documentary materials, and lay testimony in

this record that might support a finding of mental retardation, there is also sufficient evidence, including expert and lay opinion testimony, as well as written records, to support the trial court's finding that applicant failed to prove that he is mentally retarded. In such a situation, I defer to the trial court's credibility determinations and, except for numbers eight and fifteen, adopt its ultimate findings of fact. Based on those findings and my independent review, I agree with the Court's decision to deny relief.

WOMACK, J., filed a dissenting statement in which JOHNSON and HOLCOMB, JJ., joined.

I believe that all Members of the Court agree that the convicting court has made two problematic findings. In Finding 08, the convicting court found "pursuant to Tex. Health & Safety Code § 591.003[ (16) ], that a 'person with mental retardation' means a person determined by a physician or psychologist licensed in this state or certified by the department to met the stated definition of mental retardation.' "

In Finding 15, the convicting court found "that Dr. Richard Garnett [the applicant's expert witness] is not licensed as a psychologist in the State of Texas, but is

---

trial judge who was present and could assess the demeanor and credibility of the witnesses as they testified. *Ex parte Thompson,* 153 S.W.3d 416, 417–18 (Tex.Crim.App.2005).

**21.** Applicant's IQ was tested numerous times, but the results are not always clear. He was given the WISC–R at the age of ten, but the results are unknown. At the age of eleven he was retested with the WISC–R, but the record does not reflect numerical scores. His full-scale IQ score and verbal scores were categorized as "mentally deficient," and his performance IQ was categorized as "borderline." At age twelve, applicant took the Stanford–Binet, and the records indicate that applicant scored in the "borderline" range of function-

ing. At age 16 he took the WISC–R again and his full-scale IQ was in the "borderline" range, but his performance score of 86 was in the "low normal" range. At the age of 21, TDCJ records indicate an IQ test score of 85. The next year, shortly before his initial capital murder trial, he was given the WAIS–R test and his full-scale IQ score was 74/75. Two years after that he was given the WAIS–R test again and scored in the "low average" range. Various testers had noted that applicant did not always seem to focus appropriately on the task at hand and his scores might have been affected by low motivation and emotional factors.

a licensed professional counselor; that he is not licensed to diagnose mental retardation; that he is not certified by the Texas Department of Mental Health and Mental Retardation to make a diagnosis of subaverage general intellectual functioning."

The problem is that the definition of "person with mental retardation" in Section 591.003(16), which requires a determination by a physician or psychologist licensed or certified, is not part of the definition of mental retardation that is relevant for the Eighth Amendment issue that was before the convicting court. As the convicting court correctly said in Finding 07, we have held that the issue is to be determined by the definition of "mental retardation" in Section 591.003(13) or in the similar definition of the American Association on Mental Retardation. Neither of these relevant definitions requires "a determination by a physician or psychologist, licensed or certified" etc.

This Court deals with the problem by "reject[ing]" the problematic findings. Order, *ante*, at 374–75. But where does that get us? Neither of the findings is false, but neither of them should be the basis of the decision in this case. If the convicting court's conclusions were based on a mistaken belief that they required a certain expert's determination, then the severance of the findings that refer to such experts would not cure the mistake. (All the conclusions are based on " § 591.003," which contains both the relevant and the irrelevant definitions.)

I should prefer to remand the matter for the convicting court to revise its findings and conclusions to state specifically which standard it is using.