PER CURIAM:
Michael Wayne Hall was convicted of capital murder in state court. He sought state and federal habeas relief, requesting in each forum a live evidentiary hearing on his claim of mental retardation. Each court denied his request. We granted a Certificate of Appealability.
I
Michael Wayne Hall was tried in Texas state court for the murder of Amy Robinson and convicted of capital murder by the jury. Although he was convicted prior to the Supreme Court’s decision in Atkins v. Virginia, which held that the execution of mentally retarded defendants is unconstitutional,[1] there was evidence regarding his mental abilities presented at trial in mitigation. On direct appeal, the Texas Court *367 of Criminal Appeals (the “CCA”) affirmed the conviction, rejecting his Penry claim and his claim that the Constitution barred the execution of mentally retarded persons. Hall filed a state petition for writ of habeas corpus and a petition for certiorari with the United States Supreme Court. In his state habeas petition, Hall asserted his claim of a constitutional bar to execution of the mentally retarded and requested a “full and fair hearing,” urging, “There has never been a fact finding rendered by either the trial court or a jury as to the issue of whether Applicant is, in fact, mentally retarded.” While his state habeas claim was pending, the Supreme Court decided Atkins. Hall requested a live hearing on the mental retardation issue, urging, “Because the issue of whether or not Applicant is ‘mentally retarded’ has never been fully and fairly litigated and resolved by a fact-finder, this Court cannot rely solely on ... [its] recollection of the testimony from the trial which was conducted over two (2) years ago. This Court should, at a bare minimum, conduct a live hearing on this matter.” Hall also objected to the state court’s “conducting a hearing on Applicant’s Atkins claim via affidavit rather than via live hearing.” Despite Atkins, the trial court conducted a “hearing” by affidavit without awaiting the disposition of Hall’s pending certiorari petition, and the CCA, relying on the paper results, denied Hall’s state habeas claim.
The Supreme Court granted Hall’s petition for certiorari from his direct appeal to the state court, vacating and remanding to the CCA to reconsider its initial affirmance of Hall’s conviction in light of Atkins. The CCA, relying on the state habeas and direct appeal records and a “re-review[ ][of] the evidence” from the records, held that Hall was not mentally retarded.[2] Hall appealed again to the Supreme Court, which denied certiorari, and he then filed a federal habeas petition, again arguing, “Mr. Hall has a right under the Fifth, Sixth, Eighth, and Fourteenth Amendments to a full and fair hearing in a court of law on the issue of his mental retardation.” The federal district court relied on the state record to conclude that Hall was not retarded, and denied Hall’s Atkins claim. We granted a COA.
II
In applying the deferential standard under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), we are mindful of the unique facts of this case, in that Atkins was decided after Hall’s conviction, and the state’s paper hearing on the Atkins mental retardation issue was completed before Texas had defined mental retardation under the Atkins standard. We review the federal district court’s refusal to grant an evidentiary hearing on the Atkins issue for an abuse of discretion.[3]
Section 2254(e)(2) of United States Code Title 28 does not constrain the district court’s discretion here because Hall diligently developed the factual basis of his claim in state court.[4] In the state habeas *368 proceedings, Hall consistently raised his claim that he was mentally retarded and that execution of a mentally retarded individual is unconstitutional.[5] He also provided affidavits of experts, affidavits of former teachers and other individuals who were familiar with Hall’s capabilities,[6] and evidence of mental limitations, such as medical records, grade reports and special education screening results from school, and the results of Hall’s examination for competency to stand trial. These were more than adequate to establish a factual basis for his mental retardation claim.
Once a district court determines that a petitioner may be entitled to an evidentiary hearing, this is not the end of the inquiry, since “[i]n cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court.”[7] In determining whether to grant a hearing, under Rule 8(a) of the habeas Court Rules “ ‘the judge must review the answer [and] any transcripts and records of state-court proceedings ... to determine whether an eviden-tiary hearing is warranted.’ ”[8] And the Supreme Court has held since AEDPA that the court must also “consider whether such a hearing could enable an applicant to prove the petition’s factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an eviden-tiary hearing is appropriate.”[9] And finally, a district court abuses its discretion in not holding an evidentiary hearing only if *369 the state court failed to provide a full and fair hearing.[10]
The facts before us are a core manifestation of a case where the state failed to provide a full and fair hearing and where such a hearing would bring out facts which, if proven true, support habeas relief. Hall alleges that he is mentally retarded under Texas’ Atkins test for mental retardation announced in Ex Parte Brise-no: under Briseno a defendant must prove that he has “(1) significantly subaverage general intellectual functioning [‘defined as an IQ of about 70 or below’]; (2) accompanied by related limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18.”[11] Because neither Atkins nor the Briseno test had been established at his original trial, and Briseno was not decided until approximately two years after the state court’s paper hearing on mental retardation,[12] upon which the CCA and the district court relied, Hall never had the opportunity to present a full range of evidence on this technical issue.[13]
The federal district court discussed the Briseno factors but did not conduct a hearing, relying instead on the state court’s findings of mental retardation—findings that were made prior to the Briseno test. The district court explained, “In his petition, Hall thoroughly reviews the voluminous evidence as to his mental capacity. The state does the same in its response. There is no reason for the court to do so again here.”[14] The court examined the paper evidence and held, “Having independently reviewed all of the evidence, the court concludes” that “the state court’s finding that Hall is not mentally retarded was not unreasonable.”[15]
The district court also addressed Hall’s claim for a jury determination of mental retardation or, in the alternative, a live hearing. The district court found that Hall “failed to raise this issue in the state proceedings” and that it was procedurally defaulted.[16] This conclusion is incorrect; Hall consistently raised this issue in his state and federal habeas petitions. The district court went on to hold that “[e]ven if not procedurally defaulted, Hall’s claim that he was entitled to a jury determination on mental retardation is without substantive merit. Nowhere in Atkins does the Supreme Court hold that a jury determination on this issue is required.”[17] This *370 conclusion is correct, but it misses a central element of Hall’s claim — namely, that Hall requested a jury trial or at minimum a live hearing.[18]
In reviewing the paper evidence, the district court failed to account for several clearly erroneous findings of the CCA which, if addressed in an evidentiary hearing, might have highlighted the unreasonableness of the state court’s determination of the facts and entitled Hall to habeas relief. The CCA’s habeas determinations rested on the state court’s findings from the paper hearing, as the CCA fully adopted those findings.[19] In other words, errors in the state court’s factual findings were not corrected when they reached the CCA. In assessing the affidavits of experts, which address Hall’s IQ, the state court misread an IQ score of 67 reported in Dr. Church’s sworn affidavit, replacing a Wechsler Adult Intelligence Scale, third edition, exam (“WAIS-III”) score of 67 with 72. The state’s expert, Dr. Price, also erroneously relied on an IQ score of 72 in making his assessment, stating, “[I]f an individual is being assessed for the presence or absence of mental retardation and receives and [sic] IQ score of 72, then his or her actual IQ is 95% likely to fall between 67 and 77-a range of scores that may indicate mild mental retardation or borderline intelligence.”[20] Relying at least partially on this error, the state trial court concluded that Hall’s intelligence level was “either in the borderline range of intellectual functioning or in the upper end of mild mental retardation.”[21] A hearing would clarify whether Dr. Price’s conclusions with respect to Hall’s IQ, which influenced the state court’s finding, were premised on factual error.
The state trial court also made erroneous findings with respect to the credibility *371 of at least one of Hall’s experts[22] — -an expert whose testimony was central to Hall’s allegations of limited adaptive functioning.[23] The state concluded that Dr. Church’s submission should “not be given weight” because Texas law does not permit individuals with Dr. Church’s credentials to make mental health determinations. Texas’ Persons with Mental Retardation Act only permits physicians or psychologists licensed in Texas or certified by the Texas Department of Mental Health and Mental Retardation to make such determinations.[24] Yet this Act is inapplicable in the Atkins context, and the state court’s conclusion to the contrary was clearly erroneous. “The PMRA, by its own terms, is irrelevant to the application of Atkins. For Eighth Amendment purposes, it neither defines mental retardation nor — more relevantly — establishes who may diagnose mental retardation.”[25]
The issue of mental retardation, defined by Atkins only after Hall was tried and defined by Texas only after Hall’s paper “hearing” on mental retardation, is fact-intensive and rests on nuanced determinations under broadly stated concepts such as “limitations in adaptive functioning.” If Hall can prove the facts that he has consistently alleged on appeal, he will be entitled to habeas relief.[26]
Furthermore, the state court’s erroneous factfinding and its refusal to accept more than paper submissions despite the development of a new constitutional standard and a lack of guidance from the state on that standard, deprived Hall of a full and fair hearing at the state level. Although we have found paper hearings adequate where “the trial court and the state habeas court were one in the same,” as was the case here, there is a crucial distinction. Following trial, the state trial judge on habeas review faced a new constitutional rule categorically barring the execution of mentally retarded persons. Atkins was so new that Texas had not had time to establish a definition of mental retardation or the associated burdens of proof.
Nor were the district court’s findings of “facts” from the disputed assertions of affidavits below adequate. As we have discussed, some of these accepted “facts” were both critical and incorrect.[27] These *372 errors would have been drawn out in a hearing with an opportunity of counsel to examine the witnesses. Other of the district court’s conclusions rely heavily on the conflicting expert opinions of psychologists, asserted in affidavits unaired in court and shielded from cross examination. Given the material errors in credibility determinations and factfinding at the state level, we are persuaded that the determination of Hall’s claim, caught in the immediate uncertainty following Atkins, was so freighted with a risk of error in fact finding that the failure of the district court below to conduct a meaningful hearing was an abuse of discretion in these unusual and unique circumstances.
Ill
Accordingly, we VACATE the judgment of the federal district court and REMAND to that court for further proceedings including an evidentiary hearing.

. 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

. Hall v. State, 160 S.W.3d 24, 38-40 (Tex.Crim.App.2004).

. Schriro v. Landrigan, - U.S. -, 127 S.Ct. 1933, 1937, 167 L.Ed.2d 836 (2007) (“In cases where an applicant for federal habeas relief is not barred from obtaining an eviden-tiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court.”); McDonald v. Johnson, 139 F.3d 1056, 1059 (5th Cir.1998) (citing United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir.1998)) (“Denials of an evidentiary hearing are reviewed for abuse of discretion.”).

.See 28 U.S.C. § 2254(e)(2) (requiring an applicant to show, inter alia, that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence *368 that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense” only if "the applicant has failed to develop the factual basis of a claim in State court proceedings”).

. In his first state habeas petition, Hall prayed that the court would grant relief "after a full and fair hearing” and argued:
The right to argue mental retardation in mitigation on a case-by-case basis under article 37.071, section 2(e)(1), Texas Code of Criminal Procedure (the so-called Penry instruction) is insufficient to prevent the risk that retarded persons will be sentenced to death despite their lack of the requisite culpability ....

. As the CCA put it. Hall provided "testimony of three psychologists, his mother, his brother, his trial attorneys, two private investigators, four teachers, and a fellow death row inmate.” Hall, 160 S.W.3d at 39-40.

. Schriro, 127 S.Ct. at 1937.

. Id. at 1939 (quoting 28 U.S.C. § 2254, Rule 8(a) and finding that post-AEDPA, the "basic rule has not changed”).

.Id. at 1940 (internal citation omitted) (citing Mayes v. Gibson, 210 F.3d 1284, 1287-88 (10th Cir.2000)). Section 2254 provides in relevant part:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
28 U.S.C. §§ 2254(d), (e)(1).

. Clark v. Johnson, 202 F.3d 760, 766 (5th Cir.2000) (citing Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir.1998)) ("To find an abuse of discretion which would entitle ... [petitioner] to discovery and an evidentiary hearing to prove his contentions, we would necessarily have to find that the state did not provide him with a full and fair hearing

. 135 S.W.3d 1, 7 (Tex.Crim.App.2004) (internal citations and quotations omitted).

. The parties in the state habeas case filed their affidavits for the paper Atkins hearing with the trial court in September 2002. Bri-seno was decided on February 11, 2004.

. Hall emphasized in a motion to stay the paper proceeding in the state court,
Despite Atkins’ prohibition against the imposition of a death sentence against mentally retarded capital defendants, the Supreme Court's opinion leaves it to the individual States to develop the appropriate method to enforce this restriction. There is currently no statutory procedure set out in Texas to govern the determination of whether or not Applicant (or any other capital defendant) is mentally retarded as contemplated by Atkins.

. Hall v. Quarterman, 443 F.Supp.2d 815, 821 (N.D.Tex.2006) (internal citations omitted).

. Id. (citing 28 U.S.C. § 2254(d)(2)).

. Id. at 822.

. Id.

. Hall argued in his federal habeas petition, "At the very least, this court should order an evidentiary hearing on this issue [of mental retardation] so that Mr. Hall finally has an opportunity through counsel to present testimony on his behalf and to confront and cross-examine the state’s witnesses on mental retardation. The evidence already in the record that demonstrates Mr. Hall’s mental retardation is summarized below.”

. On direct appeal, the CCA likewise relied on the state habeas findings and conclusions. Specifically, it took judicial notice of the prior state habeas proceeding and its outcome and stated that its "conclusion on direct appeal [was] necessarily the same as [its] conclusion in the habeas proceedings.” Hall, 160 S.W.3d at 39. And, even in re-reviewing the evidence in "an abundance of caution,” the CCA still deferred to the trial judge's habeas findings. Id. at 40 ("While there was significant evidence in favor of a finding of mental retardation, there was also significant evidence against such a finding. The trial judge, who presided over the trial and the habeas proceedings, was in the best position to evaluate the conflicting evidence. Her findings, which we have judicially noticed in the current direct appeal, deserve great deference.”).

. The state notes that it was Hall's expert, Dr. Denkowski, who initially misstated Hall's final IQ score as 72 rather than 67. The state submits that this error was harmless because the state court discounted his affidavit, and the CCA on direct appeal noted correctly that Dr. Church's examination established an IQ of 67. Cf. Ylst v. Nunnemaker, 501 U.S. 797, 801-05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (explaining that courts look to the "last reasoned decision” of the state court in determining whether a state procedural bar precludes federal-court review). However, Hall's claim is that this erroneous recitation affected Dr. Price’s overall characterization of Hall's general intellectual functioning. Consequently, neither Denkowski’s affidavit nor the CCA's recitation of the correct post-conviction IQ score would render the error harmless.

. The state trial court never indicated which of Hall's IQ scores was most reliable. Instead, it only stated that the scores revealed that Hall was of borderline intelligence or mildly mentally retarded.

. State credibility determinations also receive AEDPA deference on habeas review, but not when overcome by clear and convincing evidence. See Summers v. Dretke, 431 F.3d 861, 871 (5th Cir.2005); 28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("A federal court can disagree with a state court’s credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.”).

. Dr. Church, a licensed psychologist in Oklahoma, testified in her affidavit that it is "highly doubtful that [Hall] alone could meet the needs of his day to day life.”

. Tex. Health & Safety Code § 591.003(16).

. In re Hearn, 418 F.3d 444, 447 (5th Cir.2005); see also Ex parte Lewis, 223 S.W.3d 372, 374 (Tex.Crim.App.2006) (Cochran, J., concurring) (joining the majority in declining to adopt the trial court’s fact findings based on Tex. Health & Safety Code § 591.003(16) and explaining that whether a physician or psychologist is licensed in Texas is of no "legal significance in deciding whether [an] applicant is mentally retarded for purposes of eligibility for the death penalty under Atkins v. Virginia or Ex parte Briseno").

. See Schriro, 127 S.Ct. at 1940.

. Dr. Denkowski’s affidavit, upon which the trial court relied in finding that Hall was not mentally retarded, indicated incorrectly that Dr. Church’s examination of Hall produced an IQ score of 72; the score was in fact a 67. Additionally, the state posited in its reply to Hall’s state habeas petition that Hall, while in prison, wrote a note that said, "You have to get me out of here because there's no call *372 button. The sink is stopped up. Also there are roaches and a small ass bed. My feet go all the way to the wall because I’m six feet four.” The document actually reads, as Hall's attorneys point out in their briefing: "you half to get out of here because there is No call button, the senk is stopd up also rauch’s and small ass bed by feet go all the way to the wall because I am 6f4.”