DENNIS, Circuit Judge,
concurring in part, dissenting in part:
I concur in the denial of a COA on Pierce’s expert evidentiary claim and his jury misconduct claim. I also concur in granting a COA on Pierce’s ineffective assistance of counsel claim and his Atkins claim, but I write separately to provide my reasons for granting a COA on the Atkins claim. Finally, I respectfully dissent from the majority’s denial of a COA on Pierce’s Brady claim for the reasons set forth below.
I. The Atkins Claim
Pierce has never been granted an evidentiary adversary hearing on his mental retardation vel non. The question of whether the Supreme Court’s decisions in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), require a court to conduct a live evidentiary hearing before declaring a defendant who presents evidence of mental retardation eligible for the death penalty is res nova and may be properly presented by this case. See Hall v. Quarterman, 534 F.3d 365, 383-84 (5th Cir.2008) (Higginbotham, J., concurring in part and dissenting in part).
In the state proceedings, three mental retardation experts, Dr. Kaufman, Dr. Garnett, and Dr. Rosin, expressed their opinions by affidavits that Pierce is mentally retarded. The state habeas court categorically excluded the opinion of Dr. Garnett on the basis that he was not licensed in the State of Texas, and thus ineligible to opine on mental retardation in civil commitments under the Persons with Mental Retardation Act (“PMRA”), Tex. Health & Safety Code § 591.003(16). Further, that court found that only the state’s mental retardation expert, Dr. Denkowski, presented a “credible affidavit.” On the strength of Dr. Denkowski’s affidavit’s criticism of petitioner’s experts, the state habeas court disregarded as immaterial the opinions of all three of petitioner’s experts and accepted Dr. Denkowski’s opinion that Pierce is not mentally retarded. Except for Dr. Denkowski’s criticism of the defense experts’ opinions, the state court did not explain why his “affidavit [was] credible” and theirs were not. The TCCA rejected the state habeas court’s finding that Dr. Garnett was not qualified as an Atkins mental retardation expert but adopted all of that court’s other findings and conclusions. Although the TCCA recognized that the state habeas court clearly erred in this respect,1 it did not assess the *798prejudice it caused Pierce or take any action to rectify the error. The district court also refused to grant Pierce an evidentiary hearing and approved the state courts’ determination that Pierce is not mentally retarded and therefore death-penalty eligible based primarily on Dr. Denkowski’s affidavit.
Because Pierce has never been granted an adversary evidentiary hearing on whether he is mentally retarded, because different state judges presided over the state capital murder ease and the state Atkins habeas proceedings, because the state mental retardation rulings were based only on diametrically conflicting affidavits, and because of the state courts’ unrectified error in holding that Dr. Gar-nett was not qualified as a mental retardation expert, it is debatable that the state Atkins proceeding did not afford Pierce due process or a full and fair hearing on his Atkins claim.
This case is substantially analogous to Hall. In Hall, we noted that it might be possible for a state court to adjudge a prisoner not mentally retarded based on a paper trial when the same judge presided over the capital murder trial and the state habeas proceedings. 534 F.3d at 371. Although the same judge had presided over both state proceedings, we held that Hall was entitled to a federal adversarial evidentiary Atkins hearing, because the state courts erroneously held that a defense expert was not qualified (for the same reason as Dr. Garnett was found unqualified) and because the Atkins decision was decided shortly before the state habeas proceedings and drastically changed the principles and standards applicable to mental retardation-death eligibility determinations. See id. at 370-72.
Like the petitioner in Hall, Pierce diligently developed the factual basis for his claim in state court by consistently raising the issue that he is mentally retarded, and submitting evidence to that effect—including the opinions of three experts that he is mentally retarded. The state court did not provide a full and fair hearing on the claim: The state court denied his claim on a “paper hearing,” different judges presided over his Atkins claim and capital murder trial, and Atkins was decided long after his original trial.2 Finally, it is beyond doubt that Pierce would be entitled to relief if he proves that he is mentally retarded. By failing to hold an evidentiary hearing, the district court may have overlooked potential errors in the state court’s resolution of the claim, including: (1) the exclusion of petitioner’s expert’s opinion on the ground that he was not licensed in the State of Texas based on the same statute at issue in Hall, an error the TCCA recognized but failed to effectively cure; (2) the state court disregarded the opinions of petitioner’s three experts in favor of the state’s expert, Dr. Denkowski, *799without making any affirmative findings as to why Dr. Denkowski was credible (instead finding only that petitioner’s experts were not); and (3) the state court failed to account for the many problems "with Dr. Denkowski’s methods and opinions in assessing mental retardation in death row petitioners, errors recognized by this court, the Texas state courts, and the state licensing authorities.3 Principally, given the lack of identity between the state capital murder trial judge and the Atkins paper trial judge, and the erroneous finding that Dr. Garnett was not qualified, Pierce is entitled to a COA on his Atkins claim and his request for an evidentiary hearing.
II. The Brady Claim
The Supreme Court held in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the Due Process Clause of the Fourteenth Amendment prohibits “the suppression by the prosecution of evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Id. at 87, 83 S.Ct. 1194. Accordingly, to establish a Brady violation, the petitioner must show: (1) that the evidence at issue is favorable to the accused; (2) that the evidence has been suppressed by the State, either wilfully or inadvertently; and (3) that he has been prejudiced as a result, meaning that the evidence is material. United States v. Sipe, 388 F.3d 471, 477 (5th Cir.2004) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Brady, 373 U.S. at 87, 83 S.Ct. 1194).
As the district court concluded, the prosecution’s case against Pierce rested on the testimony of its four identifying witnesses, including the two Sanders brothers, who split a $1,000 reward for identifying Pierce—a fact that was never disclosed to the defense and therefore suppressed. The Government, moreover, does not contest the district court’s holding that this impeachment evidence was favorable to Pierce. Thus, the only debatable question is whether this suppressed evidence was material. Jurists of reason could debate whether the evidence was material because it called into doubt the credibility of two of the state’s four identifying witnesses, and I therefore dissent from the denial of Pierce’s application for a COA on his Brady claim.
Eyewitness impeachment evidence is particularly important where, as here, there was little or no physical evidence and the prosecution’s case rested solely on the witness’ identification of the shooter-robber. There were a number of problems with the Sanders brothers’ initial, pre-reward identification (for example, only one brother saw the robbery, they initially identified Pierce’s brother, James Pierce, as the robber, but they changed their identification to Anthony Pierce after Derwin Bankett told them that James Pierce was not in Houston that day). The jury reasonably could have discredited the Sanders’ testimony had it been informed that they received two-thirds of a $1,000 state-approved reward for their testimony. The identifications of Anthony Pierce by the four witnesses would have been more vulnerable to cross-examination: they made their identification after the stressful robbery-murder in context of an arguably suggestive live lineup containing Pierce as the distinctively smallest, youngest person, placed in the No. 1 position. Thus, the *800impeachment of two of the state’s four eyewitnesses reasonably could have had a devastating effect upon the prosecution’s entire case. See Lindsey v. King, 769 F.2d 1034, 1042 (5th Cir.1985) (rejecting an “arithmetical approach” to Brady-tainted eyewitness identifications because “positive identification by two unshaken witnesses possesses many times the power of such an identification by one only, and that the destruction by cross-examination of the credibility of one of two crucial witnesses—even if the other remains untouched—may have consequences for the case extending far beyond the discrediting of his own testimony.”).
Therefore, because reasonable jurists could debate whether a jury would have found this evidence so impeaching as to discredit the identification of Pierce as the shooter-robber, I respectfully dissent from Part III. A of the majority opinion.

. "[The PMRA] is inapplicable in the Atkins context, and the state court's conclusion to the contrary was clearly erroneous. 'The PMRA by its own terms, is irrelevant to the application of Atkins. For Eighth Amendment purposes, it neither defines mental retardation nor—more relevantly—establishes who may diagnose mental retardation.’" Hall, 534 F.3d at 371 (quoting In re Hearn, 418 F.3d 444, 447 (5th Cir.2005)). The Court of Criminal Appeals has also recognized that it is erroneous to exclude a mental retardation expert’s opinions on the grounds that the expert is not licensed in Texas. See Ex parte Lewis, 223 S.W.3d 372, 374 (Tex.Crim.App.2006) (Cochran, J., concurring) (explaining that the exclusion of an expert’s opinion on the ground that he is not licensed in the State of Texas under Tex. Health & Safety Code § 531.003(16) is of no “legal significance in *798deciding whether [an] applicant is mentally retarded for purposes of eligibility for the death penalty under Atkins v. Virginia or Ex parte Briseno.”).

. In Hall, we noted that there is a “crucial distinction" between cases in which we have found paper hearings adequate because the capital murder trial judge and the state habeas judge were one and the same, and cases such as Pierce’s in which different state judges handled each proceeding. See Hall, 534 F.3d at 371; see also id. at 372 (criticizing the district court’s reliance on “thé conflicting expert opinions of psychologists, asserted in affidavits unaired in court and shielded from cross examination”); Perillo v. Johnson, 79 F.3d 441, 447 (5th Cir.1996) (finding the state court did not provide a full and fair hearing in determining the petitioner's claim on paper alone because “[i]n the instant case, the judges were different.... Because the judge in the state habeas corpus proceeding was not the trial judge, he could not compare the information presented in the various affidavits against his own firsthand knowledge of the trial”).

. See Hall, 534 F.3d at 371 n. 27; id. at 376 (Higginbotham, J., concurring in part and dissenting in part); Ex parte Plata, No. 693143-B (31st Dist.Ct. Sept. 28, 2007), aff'd, No. AP-75, 820, 2008 WL 151296 (Tex.Crim.App. Jan. 16, 2008); Tex. State Bd. of Examiners of Psychologists v. Denkowski, 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 (Tex. State Office of Admin. Hrgs).