COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-09-079-CR

 

 

EX PARTE BRYAN SCOTT

CHAMBERLAIN

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

                                                    

                                              ------------

I.  Introduction








Appellant
Bryan Scott Chamberlain appeals the trial court=s order
denying relief on his application for writ of habeas corpus that he filed
pursuant to article 11.072 of the Texas Code of Criminal Procedure.  In two issues Chamberlain complains: that the
trial court was required to conduct an evidentiary hearing on his application
and, in an issue of first impression in Texas, that the Texas Sex Offender
Registration Program (SORP) violates the substantive due process rights
guaranteed to him under the Fourteenth Amendment to the United States
Constitution.  Because the trial court
did not abuse its discretion by not conducting a hearing on Chamberlain=s
application and because the SORP does not violate substantive due process, we
will affirm the trial court=s order
denying habeas corpus relief.

II.  Procedural Background

Prior to
September 1, 1997, the code of criminal procedure imposed a ten-year sex
offender registration requirement; a person placed on deferred adjudication for
sexual assault was required to register during any community supervision term
and until the tenth anniversary of the date on which the court dismissed the
criminal proceedings against the person and discharged the person.  See Act of May 29, 1995, 74th Leg.,
R.S., ch. 676, ' 2, 1995 Tex. Gen. Laws 3649,
3649B50 and
Act of May 16, 1995, 74th Leg., R.S., ch. 258, ' 1, 1995
Tex. Gen. Laws 2197, 2197 (both amended 1997) (current version at Tex. Code
Crim. Proc. Ann. art. 62.101(a) (Vernon 2006)). 
Effective September 1, 1997, the law changed to mandate that a person
with a reportable conviction or adjudication for a sexually violent offense
register as a sex offender for the person=s entire
life.  See Act of June 1, 1997,
75th Leg., R.S., ch. 668, ' 1, 1997
Tex. Gen. Laws 2253, 2254, 2261 (amended 2005) (current version at Tex. Code
Crim. Proc. Ann. art. 62.101(a) (Vernon 2006)).[1]








Approximately
one month after the sex offender registration requirement changed to require
lifetime registration, Chamberlain pleaded guilty pursuant to a plea bargain
agreement to the second-degree felony offense of sexual assault, a sexually
violent offense.  The trial court
accepted Chamberlain=s plea and, pursuant to the
terms of the plea bargain, deferred an adjudication of guilt and placed
Chamberlain on four years= community supervision.  Chamberlain did not appeal.[2]









Chamberlain
successfully completed his community supervision term, and the trial court
discharged him from community supervision. 
Seven years later, Chamberlain filed an application for writ of habeas
corpus, asking the trial court (1) to find that his plea was involuntary
because it was obtained as a result of the ineffective assistance of his trial
counsel who had failed to inform him that his plea would require lifetime sex
offender registration instead of requiring registration only during the term of
his community supervision and for ten years thereafter and (2) to declare the
SORP unconstitutional as violative of substantive due process.  After considering Chamberlain=s
application, affidavits from Chamberlain and his friends, the State=s
response, an affidavit from Chamberlain=s trial
attorney, and Chamberlain=s reply, the trial court denied
relief without holding a hearing. 
Chamberlain now appeals.

III.  Standard of Review

In
general, a trial court=s ruling in a habeas proceeding
should not be overturned absent a clear abuse of discretion.  Ex parte Jessep, 281 S.W.3d 675, 678
(Tex. App.CAmarillo 2009, pet. ref=d).  We are to evaluate whether the trial court
abused its discretion by determining whether the trial court acted without
reference to any guiding rules or principles. 
Id.  In doing so, we view
the evidence in the light most favorable to the trial court=s
ruling.  Ex parte Wheeler, 203
S.W.3d 317, 325B26 (Tex. Crim. App. 2006)
(holding court of appeals was to review facts in light most favorable to trial
court=s ruling
even when no witnesses testified and all evidence was submitted in written
affidavits); State v. Wilson, 288 S.W.3d 13, 16 (Tex. App.CHouston
[1st Dist.] 2008, pet. granted) (applying standard of review to article 11.072
writ).

IV.  No Hearing Required








In his
first issue, Chamberlain argues that the trial court abused its discretion by
entering findings of fact and conclusions of law without conducting a live
hearing on the issue of whether his plea was voluntary.  Chamberlain complains that the trial court
abused its discretion by making fact findings based on inconclusive,
conflicting affidavit evidence concerning whether his trial counsel informed
him of the lifetime sex offender registration requirement.  Chamberlain=s
affidavit swore that he was not so informed; his trial counsel=s
affidavit indicated that he did not remember, that his file had been destroyed,
but that it would have been his normal practice to so advise Chamberlain.  Thus, Chamberlain contends that the issue of
the voluntariness of his plea hinged on the trial court=s
resolution of a credibility issue and that, consequently, he was entitled to a
hearing to test his former counsel=s
assertions that he would have informed Chamberlain of the change in the law
requiring lifetime sex offender registration. 
Chamberlain argues that the trial court=s
failure to conduct a hearing in light of this credibility issue constituted an
abuse of discretion and deprived him of due process. 








We have
previously held that there is no language in article 11.072 requiring
the trial court to conduct a hearing on an application for habeas corpus before
rendering its decision on the relief sought. 
See Ex parte Cummins, 169 S.W.3d 752, 757 (Tex. App.CFort
Worth 2005, no pet.); see also Ex parte Jones, No. 02-07-00388-CR, 2008
WL 3185168, at *9 (Tex. App.CFort
Worth Aug. 7, 2008, pet. ref=d) (mem.
op., not designated for publication).  We
have also previously held that the legislature did not intend to prohibit the
trial court from considering evidence filed with the application or with the
State=s response
without conducting a hearing.  See
Cummins, 169 S.W.3d at 757.  The
trial court=s findings of fact evidence that
it did that here.  Because article 11.072
does not require the trial court to hold a hearing before rendering its
decision on Chamberlain=s requested relief, we hold that
the trial court did not abuse its discretion by considering Chamberlain=s
application, affidavits from Chamberlain and his friends, the State=s
response, an affidavit from Chamberlain=s trial
attorney, and Chamberlain=s reply and by ruling without
holding a hearing.[3]  Accord Wheeler, 203 S.W.3d at 325B26
(requiring appellate court to defer to trial court=s
findings even when made or implied based solely on affidavits).  We therefore overrule Chamberlain=s first
issue.

V.  Substantive Due Process Satisfied













In his
second issue, Chamberlain raises as-applied and facial substantive due process
challenges to the constitutionality of the SORP under the United States Constitution.  In the trial court, however, Chamberlain
raised only as-applied challenges;[4]
he is therefore prohibited from raising a facial challenge for the first time
here.  See Karenev, 281 S.W.3d at
435 (concluding that a defendant may not raise a facial challenge to the
constitutionality of a statute for first the time on appeal).  We therefore limit our analysis to whether
the SORP as applied to Chamberlain violates substantive due process under the
United States Constitution.

A.     Chamberlain=s
Arguments and His Facts








Chamberlain
essentially makes two as-applied substantive due process challenges to the
SORP.  First, Chamberlain argues that the
SORP violated substantive due process by imposing on him a compulsory initial
registration without any individualized assessment of how dangerous he was or
his likelihood of re-offending.  Second,
Chamberlain argues that the SORP violates substantive due process because it
requires him to register for his entire life but provides no mechanism for a
determination that, at some point during his lifetime, he is no longer
dangerous or no longer a risk for re-offending and, consequently, should no longer
be required to register.  In support of
both of these challenges, Chamberlain points out in his application that his
conviction stemmed from facts that do not demonstrate dangerousness or a
likelihood of re-offending.  Chamberlain
alleges that after an evening of drinking and dancing at a nightclub, the
complainant accompanied him and his friends to an apartment where they
continued to drink and dance. 
Chamberlain claims that eventually he and the complainant retired to one
of the bedrooms where they had consensual sex. 
He alleges that the next morning, the complainant went to breakfast with
him and his friends and that the group then went to his apartment where the
complainant visited with his friends while Chamberlain took a shower and
changed clothes.  Chamberlain said that
when he took the complainant home, she kissed him, gave him her phone number,
and asked him to call her.  Chamberlain
states that he Areluctantly agreed to accept the
plea bargain and plead[ed] guilty to the charge@ because
he was advised that Athis was the quickest way to get
this whole mess over with.@ 

B.     Substantive Due Process Law

Generally,
substantive due process protects against the arbitrary exercise of governmental
powers, unrestrained by established principles of private rights.  See County of Sacramento v. Lewis, 523
U.S. 833, 845, 118 S. Ct. 1708, 1716 (1998). 
The United States Supreme Court=s
substantive due process analysis has two primary features:

First,
we have regularly observed that the Due Process Clause specially protects those
fundamental rights and liberties which are, objectively, Adeeply
rooted in this Nation=s history and tradition,@ and Aimplicit
in the concept of ordered liberty,@ such
that Aneither
liberty nor justice would exist if they were sacrificed.@ Second,
we have required in substantive‑due‑process cases a Acareful
description@ of the asserted fundamental
liberty interest. Our Nation=s
history, legal traditions, and practices thus provide the critical Aguideposts
for responsible decisionmaking@ that
direct and restrain our exposition of the Due Process Clause.








Washington v. Glucksberg, 521
U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997) (citations and parentheticals
omitted); Ex parte Morales, 212 S.W.3d 483, 493 (Tex. App.CAustin
2006, pet. ref=d).  The substantive component of the Due Process
Clause of the United States Constitution provides heightened protection against
government interference with the above described fundamental rights or liberty
interests.  Glucksberg, 521 U.S.
at 719, 117 S. Ct. at 2266.  When such a
fundamental right or liberty interest is involved, the state must show a
compelling interest to curtail it and must do so as narrowly as possible.  See Reno v. Flores, 507 U.S. 292, 301B02, 113
S. Ct. 1439, 1447 (1993).  When no
fundamental right or liberty interest is involved, however, the State must show
only a rational basis for its actions or legislation to survive a substantive
due process challenge.  See Sullivan
v. State, 986 S.W.2d 708, 714 (Tex. App.CDallas
1999, no pet.).

We begin
our analysis of Chamberlain=s
constitutional challenges with a presumption that the SORP is valid and that
the legislature has not acted unreasonably or arbitrarily by enacting it.  Rodriguez v. State, 93 S.W.3d 60, 69
(Tex. Crim. App. 2002).  The burden rests
on Chamberlain to establish its unconstitutionality.  Id.

 

 








C.     The Interest at Issue;
Rational Basis Exists

Chamberlain
claims that the SORP arbitrarily and unreasonably infringes upon his Aright@ to
rebuild his dignity.  The crux of
Chamberlain=s complaint is that his
reputation is damaged by the SORP=s
lifetime registration requirement. We interpret Chamberlain=s
argument to be that his reputation constitutes a cognizable liberty interest
for purposes of triggering the heightened substantive due process protection.[5]








Other
courts have rejected the argument that a sex offender=s
interest in his reputation is a fundamental right or a liberty interest that
will trigger heightened federal substantive due process protection from
statutory sex offender registration schemes. 
See Cutshall v. Sundquist, 193 F.3d 466, 479 (6th Cir. 1999), cert.
denied, 529 S. Ct. 1053 (2000); Doe v. Pataki, 3 F. Supp. 2d 456,
467 (S.D.N.Y. 1998); Russell v. Gregoire, 124 F.3d 1079, 1094 (9th Cir.
1997), cert. denied sub nom. Russell v. Gregoire, 523 U.S. 1007 (1998); E.B.
v. Verniero, 119 F.3d 1077, 1102B04 (3rd
Cir. 1997), cert. denied sub nom. W.P. v. Verniero, 522 U.S. 1109
(1998); Artway v. Attorney Gen. of New Jersey, 81 F.3d 1235, 1268B69 (3rd
Cir. 1996); see also Conn. Dep=t of
Pub. Safety v. Doe, 538 U.S. 1, 6, 123 S. Ct. 1160, 1164 (2003)
(holding convicted sex offender had not been deprived of liberty interest for
purposes of procedural due process challenge to SORP); Paul v. Davis,
424 U.S. 693, 712, 96 S. Ct. 1155, 1165B66
(1976) (reputation alone is not a constitutionally protected liberty
interest).  In the absence of authority
establishing that a sex offender possesses a fundamental right or liberty
interest in his reputation, we decline to recognize this allegedly fundamental
right or liberty interest.  Because
Chamberlain has not established that he possesses a fundamental right or a
liberty interest that the SORP impinges upon, his as-applied constitutional
challenges are not subject to the heightened substantive due process protection
provided when the government interferes with a fundamental right or liberty
interest.  See Glucksberg, 521
U.S. at 719, 117 S. Ct. at 2266. 
Instead, we analyze both Chamberlain=s
as-applied federal substantive due process constitutional challenges to
determine whether the SORP bears a rational relationship to a legitimate state
interest.  Accord City of Cleburne,
Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S. Ct. 3249, 3254
(1985); Tex. Workers=
Compensation Comm=n v. Garcia, 893
S.W.2d 504, 525 (Tex. 1995); In re M.A.H., 20 S.W.3d 860, 864 (Tex. App.CFort
Worth 2000, no pet.).













We first
examine the state interest; there is no question that the Texas Legislature has
a legitimate interest in protecting the citizens of Texas from sexual
predators.  See Rodriguez, 93
S.W.3d at 74; accord, e.g., United States v. Hernandez, 615 F.
Supp. 2d 601, 621 (E.D. Mich. 2009); United States v. Ambert, 561 F.3d
1202, 1209 (11th Cir. 2009); Doe v. Moore, 410 F.3d 1337, 1346 (11th
Cir.), cert. denied sub nom. John Doe I v. Moore, 546 U.S. 1003 (2005);
In re W.M., 851 A.2d 431, 451 (D.C. 2004), cert. denied sub nom. W.M. v.
Court Servs. Offender Supervision Agency, 543 U.S. 1062 (2005); Doe v.
Tandeske, 361 F.3d 594, 597 (9th Cir.), cert. denied, 543 U.S. 817
(2004); Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003), cert.
denied sub nom. Gunderson v. Fabian, 540 U.S. 1124 (2004); Akella v.
Mich. Dep=t of State Police, 67 F.
Supp. 2d 716, 733 (E.D. Mich. 1999); In re J.W., 787 N.E.2d 747, 757,
760 (Ill.), cert. denied sub nom. J.W. v. Illinois, 540 U.S. 873 (2003);
Gibson v. Ind. Dep=t of
Corr., 899 N.E.2d 40, 55 (Ind. Ct. App. 2008); McCabe v. Commonwealth,
650 S.E.2d 508, 561, 563B66 (Va. 2007).  And because the SORP=s
notification provisions inform citizens that sex offenders are living in their
communityCin order that citizens may take
necessary precautionsCthe SORP is a rational means to
further a legitimate state interest.[6]  See M.A.H., 20 S.W.3d at 865; Ex
parte Mercado, No. 14-02-00750-CR, 2003 WL 1738452, at *4 (Tex. App.CHouston
[14th Dist.] Apr. 3, 2003, no pet.) (mem. op., not designated for publication);
see also Hernandez, 615 F. Supp. 2d at 621 (ASORNA
[Sex Offender Registration and Notification Act] meets the rational basis test
because it is in the interest of government to protect the public from sex
offenders, and knowing where offenders live enables the public to assess the
risk and take protective measures as appropriate.@).  Thus, the remaining analysis requires us to
determine whether the features of the SORP challenged by Chamberlain bear a
rational relationship to the State of Texas=s
legitimate interest in protecting its citizens from sexual predators.

 

 








D.     Rational Basis Test
Applied to Chamberlain=s Claims

Chamberlain
argues that Texas=s SORP as applied to him
violates substantive due process because the statute=s
compulsory registration requirement, in the absence of any individualized
assessment of his dangerousness or risk of recidivism, bears no relationship to
any legitimate state interest.  He also
argues that the SORP as applied to him violates substantive due process because
it requires him to continue to register for his entire life and provides no
mechanism for a determination that, at some point in his life, he is no longer
dangerous or a recidivism risk.[7]









The Texas Court of Criminal Appeals has not
addressed the substantive due process challenges raised by Chamberlain; they
appear to be issues of first impression. 
Because the court of criminal appeals has not addressed the substantive
due process challenges raised by Chamberlain, we conducted national scope
research looking for guidance on how other states have addressed federal
substantive due process challenges to sex offender registration requirements.[8]  The states that have addressed as-applied
federal substantive due process challenges like Chamberlain=s to a compulsory
statutory registration requirement on the ground that it required registration
in the absence of any individualized assessment of dangerousness or risk of
recidivism have nonetheless found the statutes constitutional.  See, e.g., State v. Druktenis,
2004-NMCA-032, 135 N.M. 223, 241, 86 P.3d 1050, 1068 (N.M. Ct. App. 2004); see
also People v. Hood, 790 N.Y.S.2d 757, 758B59 (2005).  As stated by the New Mexico Court in Druktenis,

 

Presumably, the unfairness to any who might present evidence that they
do not pose a significant risk of recidivism is, in the Legislature=s view, outweighed by the
risk that citizens may be harmed notwithstanding such evidence.  SORNA=s [Sex Offender Registration and Notification Act=s] message is that no
chance should be taken, even were a sex offender able to present evidence in an
individualized hearing that he or she is integrateable into society and neither
a recidivist nor a current danger, since the risk of harm to society, no matter
what the evidence, is still too great if exceptions were permitted, a risk the
Legislature simply refuses to take.

 








135 N.M. at 241, 86 P.3d at
1068.  Likewise, the New York Supreme
Court in the Hood case rejected a defendant=s assertion
that the sex offender registration statute violated substantive due process by
failing to include a Ano risk@
category exempting purportedly non-dangerous offenders from registration.  790 N.Y.S.2d at 758B59.  The court noted that the statute mandated
registration based on a defendant=s
conviction of an enumerated sex offense, not his level of dangerousness.  Id. 
Because the SORP required Chamberlain=s
compulsory registration based on his conviction of a crime that meets the SORP=s
definition of a Asexually violent offense,@ we hold
that the SORP=s initial registration
requirement is rationally related to the legitimate state interest of
protecting citizens from sexual predators. 
See Druktenis, 135 N.M. at 
241, 86 P.3d at 1068; Hood, 790 N.Y.S.2d at 758B59.  Consequently, we hold Chamberlain has failed
to establish that the SORP=s
initial registration requirement, as applied to him, violates substantive due
process.








We next
address Chamberlain=s argument that the SORP as
applied to him violates substantive due process because it requires him to
continue to register for his entire life and provides no mechanism for a
determination that, at some point in his life, he is no longer dangerous or a
recidivism risk.  The court of criminal
appeals has rejected the exact constitutional challenge to the SORP that
Chamberlain makes when that challenge was framed as a procedural due
process challenge.  See Ex parte
Robinson, 116 S.W.3d 794, 797B98 (Tex.
Crim. App. 2003).  In Ex parte
Robinson, the court of criminal appeals discussed the United States Supreme
Court=s
decision in Connecticut Department of Public Safety v. Doe and wrote:

The [U.S. Supreme] Court held that Athe fact that respondent seeks to proveCthat he is not currently
dangerousCis of no consequence
under Connecticut=s Megan=s Law.@  The Court explained that Aeven if respondent could
prove that he is not likely to be currently dangerous, Connecticut has decided
that the registry information of all sex offendersCcurrently dangerous or
notCmust be publicly
disclosed.@

 

. . . .

 

Robinson . . . argues that this is the very flaw with the SORPCthat it does not
distinguish between dangerous and non-dangerous offenders.  He seeks a hearing to establish that he is
not dangerous.  This is the same argument
that Doe made and, like Doe, Robinson specifically limits his argument in this
court to one of procedural due process, not substantive due process.  As the Supreme Court explained, there is no
right to establish facts that are irrelevant under the statutory scheme.  And we need not address the issue of
substantive due process because it is not before us. 

 

116 S.W.3d at 797B98
(citations and footnotes omitted).













Turning
specifically to an examination of the Texas sex offender registration statute,
the SORP, reveals that a statutory mechanism does exist for persons subject to
lifetime registration to seek early termination of their obligation to
register.  See Tex. Code Crim.
Proc. Ann. arts. 62.401B.408 (Vernon 2006).  First, article 62.101 provides that A[e]xcept
as provided by . . . Subchapter I [the early termination of
registration chapter]@ a person is subject to lifetime
registration.  See id. art.
62.101(a).  Thus, the SORP clearly
creates an exception to lifetime registration; it authorizes a person who is
required to register for life to seek early termination of that obligation.  Second, Subchapter I, article 62.403 provides
for an Aindividual
risk assessment@ to be performed upon Athe
written request of a person with a single reportable adjudication@ that
requires the person to register longer under Texas law than under federal law. See
id. art. 62.403(b); see also id. art. 62.007 (Vernon 2006).  An individual risk assessment evaluates the
criminal history of a person required to register and seeks to predict the
person=s risk
of recidivism and the level of continuing danger the person poses to the
community.  Id. art.
62.043(a)(1)(2)(A), (B).  A person who is
required to register and has requested and received an individual risk
assessment may file a motion for early termination of the person=s
obligation to register.  See id.
art. 62.404.  The trial court may hold a
hearing to determine whether to grant or to deny a motion for early termination
of registration.  See id. art.
62.405.  To the extent that the SORP=s
rational relationship to the State=s
legitimate interest in protecting its citizens from sex offenders diminishes as
a sex offender over time establishes his lack of dangerousness and low risk of
recidivism, the SORP does provide a vehicle for such an offender (with a single
reportable adjudication) to obtain an individualized assessment of
dangerousness and risk of recidivism and possibly obtain early release from his
obligation to register as a sex offender.[9]

The SORP
as applied to Chamberlain does not violate substantive due process.  The SORP=s
initial compulsory registration requirement is rationally related to and
furthers a legitimate state interest, and the SORP contains a mechanism that
allows sex offenders who are purportedly not dangerous and who pose a low risk
of re-offending to petition for early termination of the registration requirements.  The record before us is thus insufficient to
rebut the presumption that the SORP is constitutional as applied to
Chamberlain.  We overrule Chamberlain=s second
issue.

 

 

 

 








VI.  Conclusion

Having
overruled both of Chamberlain=s issues
and because there is no relief from this court that is available to
Chamberlain, we affirm the trial court=s order
denying habeas corpus relief.

 

SUE WALKER

JUSTICE

 

PANEL:  GARDNER, WALKER, and
MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  December 17, 2009

 











[1]A Asexually violent offense@ is defined to include an
offense under section 22.011 of the penal code (sexual assault) committed by a
person seventeen years of age or older.  See
Act of June 1, 1997, 75th Leg., R.S., ch. 668, ' 1, 1997 Tex. Gen. Laws
2253, 2254 (current version at Tex. Code Crim. Proc. Ann. art. 62.001(6)(A)
(Vernon Supp. 2009)).





[2]In September 1999, the
State filed a petition to proceed to adjudication.  The trial court subsequently dismissed that
petition pursuant to the State=s motion to dismiss.

 





[3]In his brief, Chamberlain
relies on the Fifth Circuit case of Hall v. Quarterman, 534 F.3d 365
(5th Cir. 2008), for the proposition that he should be entitled to a
hearing.  In Hall, the Fifth
Circuit applied the deferential standard mandated by the Antiterrorism and
Effective Death Penalty Act to determine that Hall was entitled to an
evidentiary hearing on his claim that he was mentally retarded.  The Hall facts are distinguishable
from the present facts.





[4]In his application for
writ of habeas corpus in the trial court, Chamberlain argued,

 

Applicant
was required to register as a sex offender without any individualized
assessment of how dangerous he was or the likelihood of re-offending.  The trial court had no discretion in whether
to require registration, and no official of the State of Texas has discretion
to alter the requirement.  While it is
certainly the case that certain people who plead guilty to or are convicted of
a sex offense may present a high risk of re-offending, many do not.  The Texas Statute does not allow for any
assessment of the risk of re-offending by the individual defendant and does not
allow the Court any discretion in whether to require the defendant to register,
and in this case to register for life. 
In this rigid approach to sex offender registration, the statute offends
the due process clause of the 14th Amendment to the United States Constitution
in that it deprives the defendant of the fundamental liberty of a good
reputation and the opportunity to rehabilitate his reputation without allowing
for any serious evaluation of the threat the defendant presents to society. 

 

Chamberlain
thereafter prayed that the trial court would Afind and declare the Sex
Offender Registration laws of this state deprive him of liberty to which
he is entitled under the 14th Amendment to the United States
Constitution and Article 1, '' 10 and 19 of the Texas Constitution.@  [Emphasis added.]  See Karenev v. State, 281 S.W.3d 428,
435 (Tex. Crim. App. 2009) (Cochran, J., concurring) (stating that the
difference between a facial challenge and an Aas applied@ challenge to the
constitutionality of a penal statute is evidence; A[a] facial challenge is
based solely upon the face of the penal statute and the charging instrument,
while an applied challenge depends upon the evidence adduced at a trial or
hearing@).





[5]To the extent Chamberlain
asserts any different interest, it does not meet the requirement of being a
fundamental right or liberty Aobjectively, deeply rooted in this Nation=s history and tradition,
and implicit in the concept of ordered liberty, such that neither liberty nor
justice would exist if they were sacrificed.@  See
Glucksberg, 521 U.S at 720B21, 117 S. Ct. at 2268.





[6]Chamberlain does not
attack the statutory notification provisions. 
Indeed, two well-known pieces of federal legislation address the issues
of sex offender registration and community notification:  the Jacob Wetterling Crimes Against Children
and Sexually Violent Offender Registration Act, passed in 1994, requiring all
states to enact a program mandating that designated offenders register with
state or local authorities or risk losing ten percent of the states= federal anti-crime
funding, see H.R. 3355, 103d Cong. ' 170101 (1994) (outlining original version of act
adopted by Congress and signed into law), and Megan=s Law, enacted in 1996,
as an amendment to the Jacob Wetterling Act, requiring community notification
when sex offenders move into a neighborhood. 
See 42 U.S.C. ' 14071 (2003).





[7]With regard to this
challenge, Chamberlain argues that Ain the absence of some individualized assessment
that he presents a danger to [the] community . . . [t]he SORP . . . arbitrarily
creates a lifetime wall of shame . . . for people who pose no significant
risk of further crimes[, and] it is unconstitutional.@





[8]Texas=s compulsory lifetime
registration SORP applies to specifically delineated offenses.  See Tex. Code Crim. Proc. Ann. art.
62.101(a).  Registration for other
reportable offenses is generally for ten years after the person exits the penal
system.  See id. art.
62.101(c).  Many states= statutory sex offender
registration schemes, like Texas=s, create multi-tiered registration requirements
based on the type of offense committed.  See,
e.g., Ark. Code Ann. ' 12-12-919 (West 2004
& Supp. 2009); D.C. Code '' 22-4001(6), 22-4002 (2001 & Supp. 2009);
N.Y. CORRECT. LAW ' 168-h (McKinney 2003
& Supp. 2009); Okla. Stat. tit. 57, ' 583 (2004 & Supp. 2009).





[9]To the extent that
Chamberlain complains about any other aspect of the SORP, such complaints are
for the legislature=s consideration.  See M.A.H., 20 S.W.3d at 864B65 (stating that whether
application of SORP should be contingent upon juvenile=s age or the seriousness
of the offense was a question left to the legislature).  Moreover, whether the duration of the
registration for nonviolent sex offenders should be further limited is also a
matter better left to the legislature.  See
J.W., 787 N.E.2d at 760.