

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-68,348-03

### EX PARTE JUAN LIZCANO, Applicant

## ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS
## FROM CAUSE NO. W05-59563-S(A) IN THE 282nd DISTRICT COURT
## DALLAS COUNTY

**ALCALA, J., filed a dissenting statement in which JOHNSON, J., joined.**

## DISSENTING STATEMENT

I respectfully dissent from this Court's cursory order denying relief to Juan Lizcano, applicant, who presents nine allegations in his application for a post-conviction writ of habeas corpus challenging his death sentence for capital murder. Although I agree with this Court's order as to its denial of eight of the nine allegations, I dissent with respect to its denial of applicant's ground number six, entitled, "Mental Retardation," which I will refer to as his intellectual-disability claim. This Court's order determines that applicant's present intellectual-disability claim is not procedurally barred and denies his claim on its merits.

Rather than deny his allegation without explanation, I would instead file and set this ground and issue a full opinion addressing whether applicant's evidence shows that his execution would violate the Eighth and Fourteenth Amendments' prohibition against executing an intellectually disabled person. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002); U.S. CONST. amend. VIII; XIV. Because this Court has already determined that applicant's IQ is below seventy and there appears to be no dispute that the onset of that subaverage IQ occurred before he was eighteen years of age, the dispositive question in this case is whether applicant has proven through this entire record, including the new evidence presented in this application for a writ of habeas corpus, that he has adaptive deficits establishing his intellectual disability. *See Hall v. Florida*, 134 S. Ct. 1986, 2001 (2014).

In rejecting applicant's intellectual-disability claim on direct appeal and in this habeas application, this Court and the habeas court have each applied the standard this Court outlined in *Ex parte Briseno,* 135 S.W.3d 1, 8-9 (Tex. Crim. App. 2004) (applicant must demonstrate by a preponderance of the evidence that he possesses (1) significantly subaverage general intellectual functioning (an IQ of about 70 or below) and (2) related limitations in adaptive functioning (3) commencing before the age of eighteen); *Lizcano v. State*, No. AP-75,879, 2010 WL 1817772, at *12 (Tex. Crim. App. 2010) (not designated for publication). This Court rejected applicant's claim on direct appeal based on its assessment of the second *Briseno* criterion following a review of the evidence of the limitations in his adaptive functioning due to his intellectual disability. *Lizcano*, 2010 WL 1817772, at *15.

In its opinion on direct appeal denying applicant's intellectual-disability claim based on its assessment as to the adaptive-functioning prong, this Court determined that "there was significant evidence admitted that supported [applicant's] effectiveness in meeting standards of personal independence and social responsibility." *Id*. This "significant" evidence, however, merely consisted of evidence that a former girlfriend of six months called applicant "very bright"; that a deputy at the jail did not think that applicant was mentally impaired and that applicant had no problems with personal hygiene while being held in jail pending trial; and that applicant had the ability to make timely car payments. *Id*. at *13. If this minimal evidence based on two lay-witness opinions and evidence of ability to maintain personal hygiene while incarcerated and to make car payments is considered to be "significant" under the *Briseno* standard, then it is clearly time for this Court to reconsider that standard, which was judicially created in the absence of any statute to define intellectual disability. *See Briseno,* 135 S.W.3d at 8 ("Until the Texas Legislature provides an alternate statutory definition of 'mental retardation' for use in capital sentencing, we will follow the AAMR or section 591.003(13) criteria in addressing *Atkins* mental retardation claims.").

The *Briseno* standard for determining whether a particular defendant possesses significant adaptive deficits, however, has been repeatedly criticized as unscientific. *See*, *e.g.*, *Hall v. Quarterman*, 534 F.3d 365, 393 (5th Cir. 2008) (Higginbotham, J., concurring in part and dissenting in part) (using quotation marks to modify "scientific" regarding *Briseno* factors); *Chester v. Thaler*, 666 F.3d 340, 372 (5th Cir. 2011) (Dennis, J., dissenting)

(sharply criticizing the *Briseno* factors as unscientific, stating that "the *Briseno* factors turn on its head the consensus's approach to determining whether the petitioner has significant limitations in adaptive functioning"); *see also* John H. Blume et al., *Of Atkins and Men: Deviations from Clinical Definitions of Mental Retardation in Death Penalty Cases,* 18 Cornell J.L. & Pub. Pol'y 689, 711-712 (2009) ("The *Briseno* factors present an array of divergences from the clinical definitions."). This Court should take this opportunity to examine each of those *Briseno* factors and determine whether applicant's evidence establishes adaptive deficits under an appropriate test. *See Briseno,* 135 S.W.3d at 8-9. The judicially created test in *Briseno* is now a decade old, and the time has come to reassess whether it remains viable in its entirety.

It may be that applicant's new evidence is inadequate to establish his claim of intellectual disability based on an appropriate examination of adaptive deficits in light of the totality of the record. But, at a minimum, this Court should reexamine the *Briseno* standard to decide whether it has set forth an appropriate test for evaluating evidence of adaptive deficits and issue an opinion that explains whether applicant's evidence meets that test. Because this Court refuses to explain in an opinion why it concludes that applicant, whose IQ this Court has already decided is below 70, does not possess significant adaptive deficits, I respectfully dissent.

Filed: April 15, 2015

Do Not Publish