

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

NO. 2-09-079-CR

---

EX PARTE BRYAN SCOTT
CHAMBERLAIN

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Bryan Scott Chamberlain appeals the trial court's order denying relief on his application for writ of habeas corpus that he filed pursuant to article 11.072 of the Texas Code of Criminal Procedure. In two issues Chamberlain complains: that the trial court was required to conduct an evidentiary hearing on his application and, in an issue of first impression in Texas, that the Texas Sex Offender Registration Program (SORP) violates the substantive due process rights guaranteed to him under the Fourteenth Amendment to the United States Constitution. Because the trial court did not

abuse its discretion by not conducting a hearing on Chamberlain's application and because the SORP does not violate substantive due process, we will affirm the trial court's order denying habeas corpus relief.

## II. PROCEDURAL BACKGROUND

Prior to September 1, 1997, the code of criminal procedure imposed a ten-year sex offender registration requirement; a person placed on deferred adjudication for sexual assault was required to register during any community supervision term and until the tenth anniversary of the date on which the court dismissed the criminal proceedings against the person and discharged the person. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 676, § 2, 1995 Tex. Gen. Laws 3649, 3649–50 *and* Act of May 16, 1995, 74th Leg., R.S., ch. 258, § 1, 1995 Tex. Gen. Laws 2197, 2197 (both amended 1997) (current version at Tex. Code Crim. Proc. Ann. art. 62.101(a) (Vernon 2006)). Effective September 1, 1997, the law changed to mandate that a person with a reportable conviction or adjudication for a sexually violent offense register as a sex offender for the person's entire life. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2254, 2261 (amended 2005) (current version at Tex. Code Crim. Proc. Ann. art. 62.101(a) (Vernon 2006)).[1]

---

[1] A "sexually violent offense" is defined to include an offense under section 22.011 of the penal code (sexual assault) committed by a person

2

Approximately one month after the sex offender registration requirement changed to require lifetime registration, Chamberlain pleaded guilty pursuant to a plea bargain agreement to the second-degree felony offense of sexual assault, a sexually violent offense. The trial court accepted Chamberlain's plea and, pursuant to the terms of the plea bargain, deferred an adjudication of guilt and placed Chamberlain on four years' community supervision. Chamberlain did not appeal.[2]

Chamberlain successfully completed his community supervision term, and the trial court discharged him from community supervision. Seven years later, Chamberlain filed an application for writ of habeas corpus, asking the trial court (1) to find that his plea was involuntary because it was obtained as a result of the ineffective assistance of his trial counsel who had failed to inform him that his plea would require lifetime sex offender registration instead of requiring registration only during the term of his community supervision and for ten years thereafter and (2) to declare the SORP unconstitutional as violative of

---

seventeen years of age or older. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2254 (current version at Tex. Code Crim. Proc. Ann. art. 62.001(6)(A) (Vernon Supp. 2009)).

[2] In September 1999, the State filed a petition to proceed to adjudication. The trial court subsequently dismissed that petition pursuant to the State's motion to dismiss.

substantive due process. After considering Chamberlain's application, affidavits from Chamberlain and his friends, the State's response, an affidavit from Chamberlain's trial attorney, and Chamberlain's reply, the trial court denied relief without holding a hearing. Chamberlain now appeals.

## III. STANDARD OF REVIEW

In general, a trial court's ruling in a habeas proceeding should not be overturned absent a clear abuse of discretion. *Ex parte Jessep*, 281 S.W.3d 675, 678 (Tex. App.—Amarillo 2009, pet. ref'd). We are to evaluate whether the trial court abused its discretion by determining whether the trial court acted without reference to any guiding rules or principles. *Id.* In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006) (holding court of appeals was to review facts in light most favorable to trial court's ruling even when no witnesses testified and all evidence was submitted in written affidavits); *State v. Wilson*, 288 S.W.3d 13, 16 (Tex. App.—Houston [1st Dist.] 2008, pet. granted) (applying standard of review to article 11.072 writ).

## IV. NO HEARING REQUIRED

In his first issue, Chamberlain argues that the trial court abused its discretion by entering findings of fact and conclusions of law without conducting a live hearing on the issue of whether his plea was voluntary.

4

Chamberlain complains that the trial court abused its discretion by making fact findings based on inconclusive, conflicting affidavit evidence concerning whether his trial counsel informed him of the lifetime sex offender registration requirement. Chamberlain's affidavit swore that he was not so informed; his trial counsel's affidavit indicated that he did not remember, that his file had been destroyed, but that it would have been his normal practice to so advise Chamberlain. Thus, Chamberlain contends that the issue of the voluntariness of his plea hinged on the trial court's resolution of a credibility issue and that, consequently, he was entitled to a hearing to test his former counsel's assertions that he would have informed Chamberlain of the change in the law requiring lifetime sex offender registration. Chamberlain argues that the trial court's failure to conduct a hearing in light of this credibility issue constituted an abuse of discretion and deprived him of due process.

We have previously held that there is no language in article 11.072 *requiring* the trial court to conduct a hearing on an application for habeas corpus before rendering its decision on the relief sought. *See Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.); *see also Ex parte Jones*, No. 02-07-00388-CR, 2008 WL 3185168, at *9 (Tex. App.—Fort Worth Aug. 7, 2008, pet. ref'd) (mem. op., not designated for publication). We have also previously held that the legislature did not intend to prohibit the trial

5

court from considering evidence filed with the application or with the State's response without conducting a hearing. *See Cummins*, 169 S.W.3d at 757. The trial court's findings of fact evidence that it did that here. Because article 11.072 does not require the trial court to hold a hearing before rendering its decision on Chamberlain's requested relief, we hold that the trial court did not abuse its discretion by considering Chamberlain's application, affidavits from Chamberlain and his friends, the State's response, an affidavit from Chamberlain's trial attorney, and Chamberlain's reply and by ruling without holding a hearing.[3] *Accord Wheeler*, 203 S.W.3d at 325–26 (requiring appellate court to defer to trial court's findings even when made or implied based solely on affidavits). We therefore overrule Chamberlain's first issue.

## V. Substantive Due Process Satisfied

In his second issue, Chamberlain raises as-applied and facial substantive due process challenges to the constitutionality of the SORP under the United States Constitution. In the trial court, however, Chamberlain raised only as-

---

[3] In his brief, Chamberlain relies on the Fifth Circuit case of *Hall v. Quarterman*, 534 F.3d 365 (5th Cir. 2008), for the proposition that he should be entitled to a hearing. In *Hall*, the Fifth Circuit applied the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act to determine that Hall was entitled to an evidentiary hearing on his claim that he was mentally retarded. The *Hall* facts are distinguishable from the present facts.

6

applied challenges;[4] he is therefore prohibited from raising a facial challenge for the first time here. *See Karenev*, 281 S.W.3d at 435 (concluding that a defendant may not raise a facial challenge to the constitutionality of a statute

---

[4] In his application for writ of habeas corpus in the trial court, Chamberlain argued,

> Applicant was required to register as a sex offender without any individualized assessment of how dangerous he was or the likelihood of re-offending. The trial court had no discretion in whether to require registration, and no official of the State of Texas has discretion to alter the requirement. While it is certainly the case that certain people who plead guilty to or are convicted of a sex offense may present a high risk of re-offending, many do not. The Texas Statute does not allow for any assessment of the risk of re-offending by the individual defendant and does not allow the Court any discretion in whether to require the defendant to register, and in this case to register for life. In this rigid approach to sex offender registration, the statute offends the due process clause of the 14th Amendment to the United States Constitution in that it deprives the defendant of the fundamental liberty of a good reputation and the opportunity to rehabilitate his reputation without allowing for any serious evaluation of the threat the defendant presents to society.

Chamberlain thereafter prayed that the trial court would "find and declare the Sex Offender Registration laws of this state deprive *him* of liberty to which *he* is entitled under the 14th Amendment to the United States Constitution and Article 1, §§ 10 and 19 of the Texas Constitution." [Emphasis added.] *See Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring) (stating that the difference between a facial challenge and an "as applied" challenge to the constitutionality of a penal statute is evidence; "[a] facial challenge is based solely upon the face of the penal statute and the charging instrument, while an applied challenge depends upon the evidence adduced at a trial or hearing").

7

for first the time on appeal). We therefore limit our analysis to whether the SORP as applied to Chamberlain violates substantive due process under the United States Constitution.

A.     Chamberlain's Arguments and His Facts

Chamberlain essentially makes two as-applied substantive due process challenges to the SORP. First, Chamberlain argues that the SORP violated substantive due process by imposing on him a compulsory initial registration without any individualized assessment of how dangerous he was or his likelihood of re-offending. Second, Chamberlain argues that the SORP violates substantive due process because it requires him to register for his entire life but provides no mechanism for a determination that, at some point during his lifetime, he is no longer dangerous or no longer a risk for re-offending and, consequently, should no longer be required to register. In support of both of these challenges, Chamberlain points out in his application that his conviction stemmed from facts that do not demonstrate dangerousness or a likelihood of re-offending. Chamberlain alleges that after an evening of drinking and dancing at a nightclub, the complainant accompanied him and his friends to an apartment where they continued to drink and dance. Chamberlain claims that eventually he and the complainant retired to one of the bedrooms where they had consensual sex. He alleges that the next morning, the complainant went

to breakfast with him and his friends and that the group then went to his apartment where the complainant visited with his friends while Chamberlain took a shower and changed clothes. Chamberlain said that when he took the complainant home, she kissed him, gave him her phone number, and asked him to call her. Chamberlain states that he "reluctantly agreed to accept the plea bargain and plead[ed] guilty to the charge" because he was advised that "this was the quickest way to get this whole mess over with."

B.    Substantive Due Process Law

Generally, substantive due process protects against the arbitrary exercise of governmental powers, unrestrained by established principles of private rights. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 1716 (1998). The United States Supreme Court's substantive due process analysis has two primary features:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the critical "guideposts for responsible decisionmaking" that direct and restrain our exposition of the Due Process Clause.

*Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997) (citations and parentheticals omitted); *Ex parte Morales*, 212 S.W.3d 483, 493 (Tex. App.—Austin 2006, pet. ref'd).  The substantive component of the Due Process Clause of the United States Constitution provides heightened protection against government interference with the above described fundamental rights or liberty interests.  *Glucksberg,* 521 U.S. at 719, 117 S. Ct. at 2266.  When such a fundamental right or liberty interest is involved, the state must show a compelling interest to curtail it and must do so as narrowly as possible.  *See Reno v. Flores*, 507 U.S. 292, 301–02, 113 S. Ct. 1439, 1447 (1993).  When no fundamental right or liberty interest is involved, however, the State must show only a rational basis for its actions or legislation to survive a substantive due process challenge.  *See Sullivan v. State*, 986 S.W.2d 708, 714 (Tex. App.—Dallas 1999, no pet.).

We begin our analysis of Chamberlain's constitutional challenges with a presumption that the SORP is valid and that the legislature has not acted unreasonably or arbitrarily by enacting it*.  Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).  The burden rests on Chamberlain to establish its unconstitutionality.  *Id.*

C.     The Interest at Issue; Rational Basis Exists

Chamberlain claims that the SORP arbitrarily and unreasonably infringes upon his "right" to rebuild his dignity.  The crux of Chamberlain's complaint is that his reputation is damaged by the SORP's lifetime registration requirement.  We interpret Chamberlain's argument to be that his reputation constitutes a cognizable liberty interest for purposes of triggering the heightened substantive due process protection.[5]

Other courts have rejected the argument that a sex offender's interest in his reputation is a fundamental right or a liberty interest that will trigger heightened federal substantive due process protection from statutory sex offender registration schemes.  *See Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999), *cert. denied*, 529 S. Ct. 1053 (2000); *Doe v. Pataki*, 3 F. Supp. 2d 456, 467 (S.D.N.Y. 1998); *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997), *cert. denied sub nom. Russell v. Gregoire*, 523 U.S. 1007 (1998); *E.B. v. Verniero*, 119 F.3d 1077, 1102–04 (3rd Cir. 1997), *cert. denied sub nom. W.P. v. Verniero*, 522 U.S. 1109 (1998); *Artway v. Attorney*

---

[5] To the extent Chamberlain asserts any different interest, it does not meet the requirement of being a fundamental right or liberty "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *See Glucksberg*, 521 U.S at 720–21, 117 S. Ct. at 2268.

*Gen. of New Jersey*, 81 F.3d 1235, 1268–69 (3rd Cir. 1996); *see also Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 6, 123 S. Ct. 1160, 1164 (2003) (holding convicted sex offender had not been deprived of liberty interest for purposes of procedural due process challenge to SORP); *Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 1165–66 (1976) (reputation alone is not a constitutionally protected liberty interest). In the absence of authority establishing that a sex offender possesses a fundamental right or liberty interest in his reputation, we decline to recognize this allegedly fundamental right or liberty interest. Because Chamberlain has not established that he possesses a fundamental right or a liberty interest that the SORP impinges upon, his as-applied constitutional challenges are not subject to the heightened substantive due process protection provided when the government interferes with a fundamental right or liberty interest. *See Glucksberg,* 521 U.S. at 719, 117 S. Ct. at 2266. Instead, we analyze both Chamberlain's as-applied federal substantive due process constitutional challenges to determine whether the SORP bears a rational relationship to a legitimate state interest. *Accord City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254 (1985); *Tex. Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995); *In re M.A.H.*, 20 S.W.3d 860, 864 (Tex. App.—Fort Worth 2000, no pet.).

12

We first examine the state interest; there is no question that the Texas Legislature has a legitimate interest in protecting the citizens of Texas from sexual predators. *See Rodriguez*, 93 S.W.3d at 74; *accord, e.g.*, *United States v. Hernandez*, 615 F. Supp. 2d 601, 621 (E.D. Mich. 2009); *United States v. Ambert*, 561 F.3d 1202, 1209 (11th Cir. 2009); *Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir.), *cert. denied sub nom. John Doe I v. Moore*, 546 U.S. 1003 (2005); *In re W.M.*, 851 A.2d 431, 451 (D.C. 2004), *cert. denied sub nom. W.M. v. Court Servs. Offender Supervision Agency*, 543 U.S. 1062 (2005); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir.), *cert. denied*, 543 U.S. 817 (2004); *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003), *cert. denied sub nom. Gunderson v. Fabian*, 540 U.S. 1124 (2004); *Akella v. Mich. Dep't of State Police*, 67 F. Supp. 2d 716, 733 (E.D. Mich. 1999); *In re J.W.*, 787 N.E.2d 747, 757, 760 (Ill.), *cert. denied sub nom. J.W. v. Illinois*, 540 U.S. 873 (2003); *Gibson v. Ind. Dep't of Corr.*, 899 N.E.2d 40, 55 (Ind. Ct. App. 2008); *McCabe v. Commonwealth*, 650 S.E.2d 508, 561, 563–66 (Va. 2007). And because the SORP's notification provisions inform citizens that sex offenders are living in their community—in order that citizens may take necessary precautions—the SORP is a rational means to further a legitimate

state interest.[6] *See M.A.H.*, 20 S.W.3d at 865; *Ex parte Mercado*, No. 14-02-00750-CR, 2003 WL 1738452, at *4 (Tex. App.—Houston [14th Dist.] Apr. 3, 2003, no pet.) (mem. op., not designated for publication); *see also Hernandez*, 615 F. Supp. 2d at 621 ("SORNA [Sex Offender Registration and Notification Act] meets the rational basis test because it is in the interest of government to protect the public from sex offenders, and knowing where offenders live enables the public to assess the risk and take protective measures as appropriate."). Thus, the remaining analysis requires us to determine whether the features of the SORP challenged by Chamberlain bear a rational relationship to the State of Texas's legitimate interest in protecting its citizens from sexual predators.

---

[6] Chamberlain does not attack the statutory notification provisions. Indeed, two well-known pieces of federal legislation address the issues of sex offender registration and community notification: the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, passed in 1994, requiring all states to enact a program mandating that designated offenders register with state or local authorities or risk losing ten percent of the states' federal anti-crime funding, *see* H.R. 3355, 103d Cong. § 170101 (1994) (outlining original version of act adopted by Congress and signed into law), and Megan's Law, enacted in 1996, as an amendment to the Jacob Wetterling Act, requiring community notification when sex offenders move into a neighborhood. *See* 42 U.S.C. § 14071 (2003).

14

D.    Rational Basis Test Applied to Chamberlain's Claims

Chamberlain argues that Texas's SORP as applied to him violates substantive due process because the statute's compulsory registration requirement, in the absence of any individualized assessment of his dangerousness or risk of recidivism, bears no relationship to any legitimate state interest.  He also argues that the SORP as applied to him violates substantive due process because it requires him to continue to register for his entire life and provides no mechanism for a determination that, at some point in his life, he is no longer dangerous or a recidivism risk.[7]

The Texas Court of Criminal Appeals has not addressed the substantive due process challenges raised by Chamberlain; they appear to be issues of first impression.  Because the court of criminal appeals has not addressed the substantive due process challenges raised by Chamberlain, we conducted national scope research looking for guidance on how other states have addressed federal substantive due process challenges to sex offender

_____

[7]... With regard to this challenge, Chamberlain argues that "in the absence of some individualized assessment that he presents a danger to [the] community . . . [t]he SORP . . . arbitrarily creates a lifetime wall of shame . . . for people who pose no significant risk of further crimes[, and] it is unconstitutional."

15

registration requirements.[8]  The states that have addressed as-applied federal substantive due process challenges like Chamberlain's to a compulsory statutory registration requirement on the ground that it required registration in the absence of any individualized assessment of dangerousness or risk of recidivism have nonetheless found the statutes constitutional.  *See, e.g.*, *State v. Druktenis*, 2004-NMCA-032, 135 N.M. 223, 241, 86 P.3d 1050, 1068 (N.M. Ct. App. 2004); *see also People v. Hood*, 790 N.Y.S.2d 757, 758–59 (2005).  As stated by the New Mexico Court in *Druktenis*,

> Presumably, the unfairness to any who might present evidence that they do not pose a significant risk of recidivism is, in the Legislature's view, outweighed by the risk that citizens may be harmed notwithstanding such evidence.  SORNA's [Sex Offender Registration and Notification Act's] message is that no chance should be taken, even were a sex offender able to present evidence in an individualized hearing that he or she is integrateable into society and neither a recidivist nor a current danger, since the risk of harm to society, no matter what the evidence, is still too great if exceptions were permitted, a risk the Legislature simply refuses to take.

---

[8] ... Texas's compulsory lifetime registration SORP applies to specifically delineated offenses.  *See* Tex. Code Crim. Proc. Ann. art. 62.101(a). Registration for other reportable offenses is generally for ten years after the person exits the penal system.  *See id.* art. 62.101(c).  Many states' statutory sex offender registration schemes, like Texas's, create multi-tiered registration requirements based on the type of offense committed.  *See, e.g.*, Ark. Code Ann. § 12-12-919 (West 2004 & Supp. 2009); D.C. Code §§ 22-4001(6), 22-4002 (2001 & Supp. 2009); N.Y. CORRECT. LAW § 168-h (McKinney 2003 & Supp. 2009); Okla. Stat. tit. 57, § 583 (2004 & Supp. 2009).

135 N.M. at 241, 86 P.3d at 1068. Likewise, the New York Supreme Court in the *Hood* case rejected a defendant's assertion that the sex offender registration statute violated substantive due process by failing to include a "no risk" category exempting purportedly non-dangerous offenders from registration. 790 N.Y.S.2d at 758–59. The court noted that the statute mandated registration based on a defendant's conviction of an enumerated sex offense, not his level of dangerousness. *Id.* Because the SORP required Chamberlain's compulsory registration based on his conviction of a crime that meets the SORP's definition of a "sexually violent offense," we hold that the SORP's initial registration requirement is rationally related to the legitimate state interest of protecting citizens from sexual predators. *See Druktenis*, 135 N.M. at 241, 86 P.3d at 1068; *Hood*, 790 N.Y.S.2d at 758–59. Consequently, we hold Chamberlain has failed to establish that the SORP's initial registration requirement, as applied to him, violates substantive due process.

We next address Chamberlain's argument that the SORP as applied to him violates substantive due process because it requires him to continue to register for his entire life and provides no mechanism for a determination that, at some point in his life, he is no longer dangerous or a recidivism risk. The court of criminal appeals has rejected the exact constitutional challenge to the SORP that Chamberlain makes when that challenge was framed as a *procedural* due

17

process challenge. *See Ex parte Robinson*, 116 S.W.3d 794, 797–98 (Tex. Crim. App. 2003). In *Ex parte Robinson*, the court of criminal appeals discussed the United States Supreme Court's decision in *Connecticut Department of Public Safety v. Doe* and wrote:

> The [U.S. Supreme] Court held that "the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law." The Court explained that "even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders—currently dangerous or not—must be publicly disclosed."
>
>      . . . .
>
> Robinson . . . argues that this is the very flaw with the SORP—that it does not distinguish between dangerous and non-dangerous offenders. He seeks a hearing to establish that he is not dangerous. This is the same argument that Doe made and, like Doe, Robinson specifically limits his argument in this court to one of procedural due process, not substantive due process. As the Supreme Court explained, there is no right to establish facts that are irrelevant under the statutory scheme. And we need not address the issue of substantive due process because it is not before us.

116 S.W.3d at 797–98 (citations and footnotes omitted).

Turning specifically to an examination of the Texas sex offender registration statute, the SORP, reveals that a statutory mechanism does exist for persons subject to lifetime registration to seek early termination of their obligation to register. *See* Tex. Code Crim. Proc. Ann. arts. 62.401–.408

18

(Vernon 2006).  First, article 62.101 provides that "[e]xcept as provided by . . . Subchapter I [the early termination of registration chapter]" a person is subject to lifetime registration.  *See id.* art. 62.101(a).  Thus, the SORP clearly creates an exception to lifetime registration; it authorizes a person who is required to register for life to seek early termination of that obligation.  Second, Subchapter I, article 62.403 provides for an "individual risk assessment" to be performed upon "the written request of a person with a single reportable adjudication" that requires the person to register longer under Texas law than under federal law.  *See id.* art. 62.403(b); *see also id.* art. 62.007 (Vernon 2006).  An individual risk assessment evaluates the criminal history of a person required to register and seeks to predict the person's risk of recidivism and the level of continuing danger the person poses to the community.  *Id.* art. 62.043(a)(1)(2)(A), (B).  A person who is required to register and has requested and received an individual risk assessment may file a motion for early termination of the person's obligation to register.  *See id.* art. 62.404.  The trial court may hold a hearing to determine whether to grant or to deny a motion for early termination of registration.  *See id.* art. 62.405.  To the extent that the SORP's rational relationship to the State's legitimate interest in protecting its citizens from sex offenders diminishes as a sex offender over time establishes his lack of dangerousness and low risk of recidivism, the SORP does provide a vehicle for

19

such an offender (with a single reportable adjudication) to obtain an individualized assessment of dangerousness and risk of recidivism and possibly obtain early release from his obligation to register as a sex offender.[9]

The SORP as applied to Chamberlain does not violate substantive due process. The SORP's initial compulsory registration requirement is rationally related to and furthers a legitimate state interest, and the SORP contains a mechanism that allows sex offenders who are purportedly not dangerous and who pose a low risk of re-offending to petition for early termination of the registration requirements. The record before us is thus insufficient to rebut the presumption that the SORP is constitutional as applied to Chamberlain. We overrule Chamberlain's second issue.

---

[9] ... To the extent that Chamberlain complains about any other aspect of the SORP, such complaints are for the legislature's consideration. *See M.A.H.*, 20 S.W.3d at 864–65 (stating that whether application of SORP should be contingent upon juvenile's age or the seriousness of the offense was a question left to the legislature). Moreover, whether the duration of the registration for nonviolent sex offenders should be further limited is also a matter better left to the legislature. *See J.W.*, 787 N.E.2d at 760.

## VI. CONCLUSION

Having overruled both of Chamberlain's issues and because there is no relief from this court that is available to Chamberlain, we affirm the trial court's order denying habeas corpus relief.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED:  December 17, 2009

21