02-09-384-CR 














 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00384-CR

 

 


 
 
 Juan Enrique Gomez
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM County Criminal Court No. 1
OF Denton COUNTY

------------

MEMORANDUM OPINION[1]

------------

I. Introduction

          Appellant Juan Enrique Gomez
challenges his conviction for violation of a protective order.[2]  After pleading not guilty, a jury found Gomez
guilty and assessed punishment at 365 days’ confinement in the Denton County
jail.  The trial court sentenced Gomez
accordingly.  In four issues, Gomez
challenges the sufficiency of the evidence to support his conviction; the
effectiveness of his trial counsel; and the constitutionality of Texas Penal
Code section 25.07.  We will affirm.

II.  Background

          Gomez and the complainant in this
case, Pamela Beauchamp, divorced in July 2007. 
Later, in October 2008, Gomez agreed to a protective order that forbid
him from communicating directly with Beauchamp in a threatening or harassing
manner.  Gomez also agreed that he would
not engage in conduct directed toward Beauchamp, including following her or
engaging in conduct that would be reasonably likely to harass, annoy, alarm,
abuse, torment, or embarrass her.

          Donnal Watts
testified that he lives in Hackberry, Texas, and that Beauchamp is a family
friend.  Watts said that Beauchamp and
her teenage daughter lived with him and his parents at the time of the events
that led to the charges against Gomez.  According
to Watts, he met Gomez when he would come into the family’s grocery store.  He knew that Gomez and Beauchamp were once
married and that Gomez was the father of her children—Gomez and Beauchamp’s son
lives with Gomez.  Watts testified that
on January 22, 2009, he returned home from work at 11:00 a.m. and stepped out
of his car when he encountered Beauchamp leaving.  Watts said that Beauchamp told him she was going
to a job interview.  Watts testified that
as he and Beauchamp talked, he saw Gomez pull up to a nearby stop sign in a
truck.  By Watts’s
account, Gomez began to yell obscenities at them from his truck.  Watts said that Gomez was approximately 200
feet from them when he yelled.  Gomez
then drove away.

          Watts said that he and Beauchamp were
discussing whether to call the police when Gomez again drove up, yelled at them
that he was “going to get [them],” and made a “thumb on the neck” gesture.  Watts also demonstrated for the jury the
gesture Gomez allegedly made.  Watts
testified that Gomez sped away and that he and Beauchamp believed Gomez was
gone.  Watts said that he waited outside
to observe Beauchamp drive away.  Watts
testified that three to four minutes after he had gone inside, he heard a
tapping sound.  He went to the front door
and found Beauchamp crying hysterically. 
Watts said that Beauchamp told him that Gomez had tried to hit her vehicle
with his truck and that Gomez had actually run her off the road.  Beauchamp told Watts that after her vehicle
came to a stop, Gomez came up to her car and yelled
that he was going to kill her.

          Beauchamp testified that she was
leaving Watts’s house for a job interview when Watts
arrived and they stood outside talking.  Much
like Watts’s account, Beauchamp said that Gomez drove
by multiple times as she and Watts talked. 
She said that Gomez yelled and made gestures that scared her.  Beauchamp demonstrated for the jury a gesture
that Gomez allegedly made during one of his drive-bys.  Beauchamp averred that after two to three
passes, she believed Gomez was gone.  She
left in her vehicle.  As she approached a
nearby taco stand, Beauchamp said that Gomez pulled out in front of her and
forced her off the road and into a ditch.  She said that he had his windows down and
yelled at her “I’m going to get you, you ‘F’—ing
bitch.”  Beauchamp called 911.

          On cross-examination, Beauchamp said
that she had told her son that she would dismiss her case against Gomez if Gomez
would surrender his house to her and give her some money.  Beauchamp acknowledged that both Watts and
Gomez had thrown rocks at each other in the recent past.  Beauchamp testified that she had lost her job
because Gomez continually came into the grocery store where she worked in an
in-store bank.  Beauchamp said that Gomez
lived a mile away from where she did and that he did not need to drive by her
home or the store where she formerly worked in order to get to his home.

          Gomez testified.  He said that he did not violate the
protective order on January 22, 2009.  He
also said that he had been the subject of harassment by Watts, who allegedly
had followed him and threatened to kill him. 
Gomez said that Watts had previously attempted to entice him to drive in
front of the home where Beauchamp lived by throwing rocks at him.  According to Gomez, he had to drive by the
store near Beauchamp’s home in order to drive home.  He said that although he frequented the store
with his kids, he knew Beauchamp was there and he did not come near her or
speak to her.  Citing that Beauchamp was
the mother of his children, Gomez said he never stalked her, never threatened
her, and never shouted obscenities toward her. 
Gomez said that Beauchamp called the police several times, wrongfully
telling them he had a gun.  Gomez
testified that he believed her motivation was to have him put in jail so that
she could take custody of their son.  The
jury found Gomez guilty.  This appeal
followed.

III.  Discussion

          A.      Sufficiency of the Evidence

In
his first and second issues, Gomez argues that the evidence is legally and
factually insufficient to support his conviction for violation of a protective
order.  The court of criminal appeals
recently held that there is “no meaningful distinction between the Jackson v. Virginia legal-sufficiency
standard and the Clewis
factual-sufficiency standard” and that “the Jackson
v. Virginia standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.  All other cases to the contrary,
including Clewis,
are overruled.”  See Brooks v. State, No.
PD-0210-09, 2010 WL 3894613, at *8, *14 (Tex. Crim. App. Oct. 6, 2010).  Accordingly, we will apply the same standard
of review to both of Gomez’s sufficiency complaints.

                    1.       Standard
of Review

In reviewing the
sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778.

The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.  Dewberry
v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we “determine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.”  Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App.
2007).  We must presume that the factfinder resolved any conflicting inferences in favor of
the prosecution and defer to that resolution. 
Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.

2.       Application

          Viewing all of the evidence in the light most favorable to the prosecution, the evidence shows that
Gomez violated the protective order that forbid him from intentionally and
knowingly communicating with Beauchamp. 
Multiple witnesses’ testimony evinces that on January 22, 2009, Gomez
drove by Watts’s house, where Beauchamp lived and was
standing in the yard, and shouted obscenities and threatened her.  Multiple witnesses also demonstrated the
threatening gesture Gomez made toward Beauchamp.  Beauchamp’s testimony demonstrates that
shortly after having shouted these threats and obscenities, Gomez drove his
vehicle toward Beauchamp’s vehicle, forcing her off the road.  According to Beauchamp’s testimony, almost
immediately Gomez again threatened her.  We
conclude that the jury could have found beyond a reasonable doubt that Gomez violated
the protective order as described in the information.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  We
overrule Gomez’s first and second issues.

          B.      Effective Assistance of Counsel

In
his third issue, Gomez argues that he received ineffective assistance of
counsel.  But Gomez did not allege
ineffective assistance of counsel in the trial court, neither by objection nor
through the vehicle of a motion for new trial, and Gomez does not claim that
the conduct of his trial counsel was so deficient that no reasonable trial
counsel would have engaged in it as a reasonable trial strategy.  Filing a motion for new trial based on
ineffective assistance of counsel would have afforded the trial court the
opportunity to conduct a hearing as to any alleged failures.  As such, the record is not sufficiently
developed to allow us to do more than speculate as to the strategies of Gomez’s
trial counsel.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994) (reasoning that when the record is silent as to possible trial
strategies employed by defense counsel, a reviewing court should not
speculate on the reasons for those strategies); see also Downs v. State, 244 S.W.3d 511,
515 (Tex. App.—Fort Worth 2007, pet. ref’d) (same).  Thus, we cannot determine that Gomez was
denied effective assistance of counsel.  Gomez
has a more appropriate remedy in seeking a writ of habeas corpus to allow him
the opportunity to develop evidence to support his complaints.  See
Robinson v. State, 16 S.W.3d 808, 810 (Tex. Crim.
App. 2000) (noting that a postconviction writ
proceeding is the preferred method for gathering the facts necessary to
substantiate an ineffective assistance of counsel claim).  We overrule Gomez’s third issue.

C.      Constitutional
Challenge

In
his fourth issue, Gomez challenges the constitutionality of penal code section
25.07.  See Tex. Penal Code Ann.
§ 25.07.  Specifically, Gomez argues
that the statute is unconstitutional on its face because it is overbroad and
vague.  We conclude that Gomez forfeited
this issue.

The Texas
Court of Criminal Appeals has held that “a defendant may not raise for the
first time on appeal a facial challenge to the constitutionality of a
statute.”  Karenev v. State, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).  Here, there is no indication in the record
that Gomez raised a facial challenge to the constitutionality of section 25.07
at trial.  Gomez has thus failed to
preserve this issue on appeal.  See Ex
parte Chamberlain, 306 S.W.3d 328, 332 (Tex.
App.—Fort Worth 2009, pet. granted) (holding that appellant was prohibited from
raising facial challenge to constitutionality of statute for first time on
appeal).  We overrule Gomez’s fourth
issue.

IV.  Conclusion

          Having overruled all four of Gomez’s
issues, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
WALKER, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 9, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 25.07(a)(1) (Vernon Supp. 2010).