

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00117-CR

BRADLEY GREGG                                                              APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2014-0360-A

----------

## MEMORANDUM OPINION[1]

----------

Appellant Bradley Gregg appeals his conviction for sexual assault.  *See*

Tex. Penal Code Ann. § 22.011 (West 2011).  We affirm.

---
[1]*See* Tex. R. App. P. 47.4.

## Background

On June 25, 2013, 15-year-old A.V. made an outcry of sexual abuse against Appellant, her 36-year-old maternal uncle.

At the time of the outcry, A.V. was living with her father and stepmother, and her mother exercised supervised visitation rights every other weekend. A.V.'s mother did not have a stable place to live, and during many of these weekend visitations, A.V. and her sister would stay with Appellant in Denton.

The relationship between A.V. and Appellant was a close one, and they talked about many things, including sex. At trial, A.V. acknowledged that over time she had developed romantic feelings for Appellant, which she described as a "crush."

According to A.V., during this time she had a boyfriend, and when she attempted to send a topless photograph of herself to him over her cell phone, she accidentally sent it to Appellant instead. A.V. testified that Appellant did not ask her to send the photograph to him and that she and Appellant never discussed it. Nevertheless, forensic testimony at trial established that Appellant did not delete the photograph, but twice saved and stored the photograph on his cell phone.[2] The investigating detective, Detective David Bearden of the Denton Police Department, testified that Appellant had informed his parents—A.V.'s

---

[2]The photograph was sometimes referred to in the record as "photographs" and was admitted as two exhibits. For simplicity, we will refer to the admitted exhibits as the single "photograph."

grandparents—of the photograph, but his testimony did not establish when Appellant may have told them.

On Friday, June 22, 2013, Appellant picked up A.V. and brought her to his residence to spend the weekend with him. During the evening of the next day, Appellant showed A.V. a pair of thong underwear and asked A.V. if she had ever worn underwear of that kind. A.V. testified that she was "a little shocked" at first, but she took the thong from Appellant and tried it on underneath her pajama bottoms. According to A.V., she –

> kind of flaunted it around like saying, "Oh, I'm wearing it." And he said that was cool. And he asked if it fit right and stuff like that.

Later that evening, while they were playing a video game on his bed, Appellant leaned in and kissed her on the lips. According to A.V., this, too, surprised her, but she testified that "it just really didn't matter. The hormones were kind of kicking in, and I figured I could trust him." Eventually the two removed their own clothing and Appellant asked A.V. if she had ever "69'ed" before. When A.V. responded that she had not, Appellant and A.V. began performing oral sex on each other in that manner for what A.V. described as "quite a while." At some point, Appellant "pushed [her] off of him," and as she lay on the bed she heard a wrapper being opened, and she knew that Appellant was getting a condom. A.V.testified,

> And so I was like, Okay, everything is fine, nothing is going to happen. Well, then he said, I'm sorry, I just have to do this. And I said, What? And then he's like, Nothing, it's okay. And I said, Okay.

3

And he stuck his penis in me two times. It hurt really bad. I got up as fast as I could and ran to the door and just started crying.

A.V. later testified that although she had wanted it to happen, once it actually did, she wished it had not. Afterwards, she ran out of the bedroom and into the bathroom, where she immediately took a shower, got dressed, and then went to another bedroom where she slept when she stayed the night. According to A.V., at that point she was feeling "disgust" and "regret." Appellant later came into the room, said he was sorry and told her that if she told anyone, "he would probably kill himself because he felt so bad." Before he left A.V., Appellant tried to hug her, telling her everything was okay and that he hoped she slept well. A.V. then cried herself to sleep.

The next morning, Appellant again told A.V. not to say anything, and A.V. responded that she would not. But a few days later, in a regularly-scheduled appointment with her counselor, she told her counselor what had happened with Appellant during the prior weekend. A.V. testified that when she was subsequently examined by a Sexual Assault Nurse Examiner (SANE), she "made it sound like he was just a bad guy and did everything," but in reality "[they] both had some kind of part in this." She later regretted having placed the blame completely on Appellant in her conversation with the SANE.

During an interview with Crystal Powell, an investigator at the Children's Advocacy Center, A.V. recanted and said that nothing had happened. She told Powell that it was all a "big lie," that it was "just a really bad dream," and that she

4

did not want to get her uncle in trouble. A.V. testified that she felt she was in an "impossible situation" and that she "lied during th[e] whole thing." She testified at trial that she had decided to tell Powell it was a dream because, "I don't want to have to deal with what I'm dealing with right now. I would still have my family, and things would be normal."

Detective Bearden observed Powell's interview of A.V. and testified at trial that he thought A.V. was not being truthful in the interview. He noted that A.V. appeared "bewildered when she started talking about the allegations or what had taken place" and that she gave a significant amount of details regarding the assault considering her newfound claim that it was all a dream.

A.V.'s maternal family members, who did not believe A.V's allegations against Appellant, reacted with hostility and alienation after her outcry. Detective Bearden described A.V.'s mother as showing anger and disbelief toward A.V. both after the interview with Powell and again when he met with her mother in July 2013. At the time of trial, A.V. had not seen her maternal grandparents since the day she told them of the assault.

After A.V. recanted in her interview with Powell, Detective Bearden interviewed her personally. In that interview, A.V. told him that the sexual assault had actually happened, but she left some details out, including the oral sex that she and Appellant had performed on each other. When asked at trial why she had told Detective Bearden it had really happened, A.V. testified, "I wanted things

5

to be okay again, but even if I said it did happen, it's still going to be awkward. Like I'm never going to be able to look at my uncle the way I used to, ever."

Detective Bearden also interviewed Appellant. According to Detective Bearden, Appellant claimed that A.V. fell asleep while they were playing the video game and that when she woke up, she was in a panic and quickly went to the bathroom. Appellant surmised that A.V. must have dreamed that the assault occurred, and since A.V. was infatuated with him, she was disappointed when she realized that nothing happened between them. Detective Bearden described Appellant's explanation as suspicious.

In December 2015, A.V. once again recanted in a voice message on the prosecutor's phone.[3] When asked why she left the message, A.V. testified, "Because I missed my family. I missed everything." When A.V. met with the prosecutor, she told him that she made up the accusation because Appellant would not do something with her, that he was totally innocent, and that she never thought that things would go so far when she initially accused him.[4]

---

[3]A recording of the voice message was admitted into evidence and played for the jury at trial.

[4]During trial, A.V. and Appellant's counsel shared the following exchange:

> Q: Did you tell Mr. Dickens and the other people at the DA's office that because Uncle Brad wouldn't do something with you, that so—and quote, so to get back at him, you just made up an accusation?

> A: Yes.

Prior to opening statements at trial, a hearing was held outside the presence of the jury to determine the admissibility of the topless photograph of A.V. that the police had discovered on Appellant's cell phone. Detective Bearden testified that he had obtained a search warrant to obtain Appellant's cell phone and search it. Detective Bearden and Detective Eric Beckwith searched the phone and discovered the topless photograph of A.V. Detective Beckwith testified that he performed a forensic analysis of the phone and determined that, although several files had been deleted on the phone over time, Appellant had not deleted the topless photograph of A.V. The trial court overruled Appellant's rule 403 objection to the admission of the evidence and his assertion that article 38.37 violated Appellant's due process rights. At the time the photograph was admitted into evidence, the trial court provided the jury with a limiting instruction.

The jury found Appellant guilty of sexual assault and sentenced him to six years' confinement.

---

. . . .

Q: Did you also tell them that when you made up that allegation because you were mad at Uncle Brad that you never thought this thing would go as far as it has?

A: Yes.

Q: Did you tell them that Bradley Gregg is totally innocent of this charge?

A: Yes.

7

**Discussion**

In two issues, Appellant argues that the trial court erred in admitting the topless photograph of A.V. In his first issue, Appellant argues that the admission of the photograph under article 38.37 of the code of criminal procedure violated Appellant's right to due process. In his second issue, Appellant argues that the trial court abused its discretion in admitting the photograph over his objection under rule 403.

## I. Constitutionality of Article 38.37

Article 38.37, section 1 provides that in the trial of a defendant for certain enumerated crimes, including sexual offenses against a child under the age of 17,

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> > (1) the state of mind of the defendant and the child; and
> >
> > (2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37, §1(b) (West Supp. 2016). Although Appellant argues that article 38.37, section 1, of the code of criminal procedure is unconstitutional and admitting the photograph into evidence pursuant to that rule violated Appellant's rights to substantive due process, Appellant also acknowledges in his brief that we have previously held that article 38.37 is constitutional.

8

In *Martin v. State*, 176 S.W.3d 887, 901–02 (Tex. App.—Fort Worth 2005, no pet.), we joined three of our sister courts in holding that article 38.37 did not violate an accused's right to due process. *See Brantley v. State*, 48 S.W.3d 318, 329–30 (Tex. App.—Waco 2001, pet. ref'd); *Jenkins v. State*, 993 S.W.2d 133, 135 (Tex. App.—Tyler 1999, pet. ref'd); *Phelps v. State*, 5 S.W.3d 788, 798 (Tex. App.—San Antonio 1999, pet. ref'd). With regard to these cases, however, Appellant complains that our opinion in *Martin* did not provide any analysis[5] and that the analysis performed by the Tyler court in *Jenkins* was flawed.

We must review the constitutionality of a statute in light of the presumption of the statute's validity and presume that the legislature did not act unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). It is Appellant's burden to show that the statute is unconstitutional. *Id.*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. U.S. Const. Amend. XIV, §1; *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 2788 (1979). "The essential guarantee of the Due Process Clause is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987), *cert.*

---

[5]Although we did not provide a separate constitutional analysis in *Martin*, our court joined with Waco in adopting the "position" taken by the Tyler court in deciding this issue in *Jenkins*. *Martin*, 176 S.W.3d at 902.

9

*denied*, 485 U.S. 993 (1988), *overruled on other grounds*, *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

In determining whether a statute violates a defendant's substantive due process rights, we first determine whether a fundamental right or liberty interest is involved. *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997). When such a right or interest is involved, the State must show a compelling interest to curtail it and must do so as narrowly as possible. *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S. Ct. 1439, 1447 (1993). When no fundamental right or liberty interest is involved, the State must show only a rational basis for its actions or legislation to survive a substantive due process challenge. *Ex parte Chamberlain*, 306 S.W.3d 328, 333 (Tex. App.—Fort Worth 2009), *judgment vacated on other grounds*, 335 S.W.3d 198 (Tex. Crim. App. 2011).

Appellant argues that the admission of extraneous-offense evidence under article 38.37 violates the fundamental right to a fair trial that was recognized in *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692 (1976). We disagree with Appellant's assertion that the right to a trial free of extraneous-offense evidence is the equivalent to the recognized fundamental right to a fair trial, and Appellant has supplied us with no support for this argument. *See Washington*, 521 U.S. at 721, 117 S. Ct. at 2268 ("[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest.") (quoting *Reno*, 507 U.S. at 302, 113 S. Ct. at

10

1447). In fact, both state and federal courts have determined that the admission of extraneous-offense evidence does not implicate a fundamental right. *See United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (holding federal rule 413, which allows evidence of other sexual assaults, does not implicate a fundamental right because "it was within Congress's power to create exceptions to the longstanding practice of excluding prior-bad-acts evidence"); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) ("Considering the safeguards of [federal] Rule 403, we conclude that [federal] Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause."); *Harris v. State*, 475 S.W.3d 395, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("Appellant has failed to cite any controlling authority providing that he has a fundamental right to a trial free from the introduction of extraneous offense evidence."); *cf. Chamberlain*, 306 S.W.3d at 334 ("In the absence of authority establishing that a sex offender possesses a fundamental right or liberty interest in his reputation, we decline to recognize this allegedly fundamental right or liberty interest."). We therefore determine next whether there exists a rational basis to support article 38.37's enactment. *See Chamberlain*, 306 S.W.3d at 333.

In accordance with traditional notions of due process, evidence of extraneous offenses is usually excluded because it is inherently prejudicial, tends to confuse the issues in a case, and forces the accused to defend himself against collateral charges. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App.

11

1972). However, Texas courts have long recognized the unique nature of crimes of sexual assault in justifying the admission of extraneous-offense evidence:

> We do hold that in trials of an accused for rape under the age of consent and if material in determining the truth or falsity of the accusations, there can be taken into consideration the associations between the parties and their evident regard each for the other as evidencing the probability of the charged act and the unnaturalness of the accused's attitude toward the victim of his lust, even in the presence of other acts of like character to the one on which the prosecution is based.
>
> . . . .
>
> In matters of incest or rape under the age of consent, it is often of importance to show the attitude between them and the relative size, age and strength of the parties, and if possible, to show how on[e] in a position demanding care and guidance of a related person, has failed in such duty and has adopted an unnatural attitude relative thereto, and by fondling or otherwise, evidences a desire for sexual gratification toward such child or relative. We therefore think that where any such acts become material to thus show them they are admissible.

*Johns v. State*, 236 S.W.2d 820, 823 (Tex. Crim. App. 1951); *see also Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). As *Jenkins* explained, "[t]he special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts." *Jenkins*, 933 S.W.2d at 136.

As we noted in *Martin*, the Waco, Tyler, and San Antonio courts have also recognized the nature of this interest in holding that article 38.37, and section 1 in particular, is constitutional. *Martin*, 176 S.W.3d at 901–02 (citing *Brantley*, 48 S.W.3d at 329–30; *Jenkins*, 993 S.W.2d at 135; *Phelps*, 5 S.W.3d at 798). In addition, at least five other Texas courts have also relied on this reasoning in holding that section 2 of article 38.37, which is broader than section 1 by permitting third-party extraneous-offense evidence explicitly for propensity purposes, is constitutional. *Carrillo v. State*, No. 08-14-00174-CR, 2016 WL 4447611, at *9 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (not designated for publication); *Bezerra v. State*, 485 S.W.3d 133, 140 (Tex. App.—Amarillo, pet. ref'd), *pet. for cert. filed*, (U.S. Sept. 14, 2016) (No. 16-324); *Robisheaux v. State*, 483 S.W.3d 205, 213 (Tex. App.—Austin 2016, pet. ref'd); *Belcher v. Texas*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.); *Harris*, 475 S.W.3d at 403.

Article 38.37 does not lessen the presumption of innocence or reduce the State's burden of proof. *Jenkins*, 993 S.W.2d at 136–37. Furthermore, the statute provides a number of procedural safeguards provided by the statute to insure that Appellant's right to a fair trial is protected. The State must give the defendant notice of its intent to introduce evidence of an extraneous offense in its case-in-chief not later than the thirtieth day before the date of trial. Tex. Code Crim. Proc. Ann. art. 38.37, §3.

Furthermore, the statute provides a procedural safeguard to ensure that one of the dangers identified in *Albrecht*—undue prejudice, confusion of the

13

issues, and the forcing of an accused to defend himself against a collateral charge—are mitigated. *Albrecht*, 486 S.W.2d at 100. As is discussed in more detail below, the first two concerns about undue prejudice and confusion of the issues are tempered through the interplay of rule 403 in the trial court's determination of whether to permit or refuse admission of the evidence. As to concerns about a jury convicting on the collateral charge, before such evidence can be introduced, the trial judge must conduct a hearing outside of the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." Tex. Code Crim. Proc. Ann. art. 38.37, §2-a. Defense counsel is entitled to be fully heard on this matter and may challenge by cross-examination any witness's testimony at the hearing. *Harris*, 475 S.W.3d at 402.

In this case, the trial court also gave a limiting instruction, instructing the jury that the photograph could only be considered for the purpose of "showing . . . the state of mind of a child and the accused via a previous and subsequent relationship between the accused and the child, proof of opportunity, proof of plan or the intent of the accused." The court further instructed that the jury could not consider the photograph to prove Appellant's character to show that he acted

in conformity therewith during the June 2013 assault.[6]  A similar instruction was also included in the jury charge.

Appellant has not persuaded us to depart from our holding in *Martin.* Because we again hold that article 38.37 is constitutional, we overrule Appellant's first issue.

## II. Rule 403 objection

In his second issue, Appellant argues that the trial court abused its discretion in admitting the topless photograph of A.V. over Appellant's rule 403 objection.

The trial court is given wide latitude to admit or exclude evidence of extraneous offenses.  *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g).  We review a trial court's ruling to admit or exclude

---

[6]Specifically, the court instructed the jury as follows:

The Defendant is on trial solely on the charge contained in the Indictment.  The State has introduced into evidence as act or acts, other than the one charged in the Indictment.  With reference to those other acts, you are instructed that said evidence was admitted only for the purpose of showing, if it does, the state of mind of a child and the accused via a previous and subsequent relationship between the accused and the child, proof of opportunity, proof of plan or the intent of the accused.

You cannot consider testimony for any purpose unless you find beyond a reasonable doubt that the Defendant committed such other acts, if any were committed.  If you so find beyond a reasonable doubt, you can consider the evidence only for the purposes allowed.  The evidence may not be considered to prove the character of the Defendant in order to show that he acted in conformity therewith on the occasion in question.

15

evidence under an abuse of discretion standard. *Mai v. State*, 189 S.W.3d 316, 320 (Tex. App.—Fort Worth 2006, pet. ref'd). If the court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion. *Id.*

When evidence is admitted under article 38.37, it may still be excluded under rule 403 if the evidence will unfairly prejudice the defendant because its probative value is substantially outweighed by, among other considerations, the danger of unfair prejudice to the defendant or confusion of the issues. Tex. R. Evid. 403; *Nolen v. State*, 872 S.W.2d 807, 811 (Tex. App.—Fort Worth 1994, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 388–89). When a rule 403 objection is made, the trial court must engage in a balancing process. *Nolen*, 872 S.W.2d at 811. Factors that the trial court should consider in the balancing include: (1) how compellingly the extraneous-offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way; (3) the amount of trial time that the proponent uses to develop evidence of the extraneous offense; and (4) the proponent's need for the extraneous-offense evidence. *Id.* at 811–12.

We thus look first to how compellingly the introduction of the topless photograph served to make a fact of consequence more or less probable. The State argues that the photograph "demonstrates the nature of the relationship

16

between Appellant and A.V. and his state of mind regarding his niece—namely, that he was sexually attracted to her." Indeed, the circumstances surrounding the incident are relevant to placing the offense in perspective. *Lewis v. State*, 676 S.W.2d 136, 139 (Tex. Crim. App. [Panel Op.] 1984). Nude photos of sexual assault complainants in particular have been held admissible because they showed "the intent of appellant to gratify his sexual desire and to show his unnatural attention or lascivious intent toward the victim." *Hall v. State*, 711 S.W.2d 108, 110 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). In *Hall*, the court of criminal appeals held that photographs that depicted the nude complainant in suggestive poses were admissible to show his unnatural attention and intent toward the victim. *Id.*

A.V. testified that she accidentally sent the photograph to Appellant shortly before the June 22, 2013 assault. Appellant argues that the fact that the photograph was sent accidentally, as opposed to at his personal request, weighs in his favor in making the photograph irrelevant. But Appellant did not discuss the photograph with A.V. and there is no indication that he knew that he was not the intended recipient of the photograph prior to the assault. Further, forensic evidence showed that Appellant did not attempt to delete the photograph but instead saved it twice and kept it stored on his phone. The fact that Appellant kept the photograph is indicative of Appellant's state of mind or his view of the nature of their relationship, as well as relevant to showing an opportunity to commit the assault. *See Sanders v. State*, 255 S.W.3d 754, 759 (Tex. App.—

17

Fort Worth 2008, pet. ref'd) (holding testimony regarding third-party extraneous offenses was relevant to "demonstrate the unnatural attitude and relationship" appellant had developed toward the child complainant); *Ernst v. State*, 971 S.W.2d 698, 700 (Tex. App.—Austin 1998, no pet.) (holding extraneous-offense evidence was relevant to show "appellant's state of mind and the previous relationship between appellant and the victim"). The first factor therefore weighs in favor of admitting the topless photograph.

In considering the potential of evidence to impress the jury in some irrational way, we have compared the nature of the evidence to the nature of the charged offense. *See Sanders*, 255 S.W.3d at 761 (upholding admission of third-party extraneous-offense evidence where it "paled in comparison" to the complainant's "graphic testimony" of appellant's repeated sexual assaults of her); *Jones v. State*, 119 S.W.3d 412, 422 (Tex. App.—Fort Worth 2003, no pet.) (noting that evidence of extraneous sexual offenses was "less heinous" than the evidence relating to the charged offense). While the evidence of the topless photograph in this case may have been troublesome and unpleasant, A.V.'s detailed testimony regarding the sexual acts perpetrated by Appellant, her uncle, was far more disturbing. She described how Appellant gave her a thong to wear, that he kissed her, that he asked her if she had ever "69'ed" before, performed oral sex on her while she reciprocated, and then put on a condom before inserting his penis into her sexual organ twice. This factor therefore weighs in favor of admitting the photograph.

18

Next we look at how much time the State spent developing the evidence. Only four of the approximately 73 pages of testimony by A.V. in front of the jury related to the photograph. Officer Ross Deter testified for approximately three pages about his recovery and inventory of Appellant's cell phone when he booked Appellant into the Denton County Jail after his arrest. Detective Bearden testified for approximately nine pages regarding the photograph. The lengthiest testimony on this subject came from Detective Beckwith, who testified for approximately 40 pages regarding his activities in performing a forensic analysis of the phone and determining what was stored on and deleted from the phone, but much of that testimony was related to the forensic process and not necessarily focused upon the photograph itself. Out of the approximately 240 pages of testimony comprising the State's case-in-chief, only approximately 56 of those addressed the photograph in any way, and most of the testimony on those pages mentioned the photograph only indirectly or in passing.

The State argues that the nature of the evidence—a photograph stored on the Appellant's phone—required more time than the admission of a simple photograph usually requires because of the need for forensic testimony by Detective Beckwith. The record bears this out.

And, as the State further notes, the connection of the topless photograph of A.V. to the charged offense of sexual assault of A.V. in this case meant that its introduction did not significantly distract the jury from the charged offense. We agree.

19

Even if we were to conclude that the time spent developing the evidence of the photograph was significant, the necessity of the photograph to the State's case weighs in favor of its admission. In determining the necessity of extraneous-offense evidence, we look to whether the proponent has other available evidence to establish the fact of consequence, how strong that other evidence is, and if the fact of consequence is related to a disputed issue. *Gonzales v. State*, 477 S.W.3d 475, 481 n.20 (Tex. App.—Fort Worth 2015, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 390). As is the case in most sexual assault cases, the State's case was founded primarily on A.V.'s testimony and came down to her credibility against Appellant's. Appellant's defense was to undermine A.V.'s credibility and point out her recantations and the different versions of the story she told to various people. As we noted above, the photograph was relevant, and indeed necessary in light of the evidence of her recantations and differing stories, to show Appellant's state of mind, the nature of the relationship between Appellant and A.V, and an opportunity to commit the assault.

Considering the relevant factors, we hold that the trial court did not abuse its discretion in overruling Appellant's rule 403 objection to the admission of the photograph. We therefore overrule Appellant's second issue.

## Conclusion

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

20

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 1, 2016